UNITED STATES COURT OF APPEALS
SECOND CIRCUIT

VDARE FOUNDATION, INC.,

                    *Plaintiff-Appellant,*                    No. 26-52

                              v.

LETITIA JAMES, RICHARD SAWYER, YAEL FUCHS,
JAMES SHEEHAN, MEGHAN FAUX, EMILY STERN,
RACHEL FINN, BENJAMIN D. LIEBOWITZ, NEW YORK
STATE ATTORNEY GENERAL OFFICE,

                    *Defendants-Appellees,*

CATHERINE SUVARI,

                    *Defendant.*

# MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR AN INJUNCTION PENDING APPEAL

LETITIA JAMES
  *Attorney General*
  *State of New York*

BARBARA D. UNDERWOOD          Attorney for Appellees
  *Solicitor General*          The Capitol
JEFFREY W. LANG               Albany, New York 12224
  *Deputy Solicitor General*   (518) 776-2044
JONATHAN D. HITSOUS
  *Assistant Solicitor General*
      *of Counsel*             Dated: April 23, 2026

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ....................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................... 2

    A.   The Attorney General's Investigation and Initiation of a
         Civil Enforcement Action Against VDARE ............................... 2

    B.   VDARE's Most Recent Federal Lawsuit ................................... 4

ARGUMENT

   VDARE IS NOT ENTITLED TO AN INJUNCTION PENDING APPEAL ............ 7

    A.   VDARE Has Failed to Demonstrate a Likelihood of
         Success on the Merits. ............................................................ 7

         1.   VDARE's entire action is barred under *Younger* .............. 8

         2.   VDARE is unlikely to succeed on any of its claims ......... 12

    B.   VDARE Has Failed to Demonstrate a Risk of
         Irreparable Harm .................................................................. 16

    C.   VDARE Has Failed to Demonstrate That a Preliminary
         Injunction Would Serve the Public Interest .......................... 19

CONCLUSION ................................................................................. 22

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Agudath Israel of Am. v. Cuomo,*
979 F.3d 177 (2d Cir. 2020) ............................................................... 7

*Bennett v. Goord,*
343 F.3d 133 (2d Cir. 2003) ............................................................. 13

*Care One LLC v. Nat'l Labor Relations Bd.,*
166 F.4th 335 (2d Cir. 2026) ........................................................... 16

*Church of Am. Knights of the Ku Klux Klan v. Kerik,*
356 F.3d 197 (2d Cir. 2004) ............................................................. 14

*Citibank, N.A. v. Citytrust,*
756 F.2d 273 (2d Cir. 1985) ............................................................. 17

*Citizens United v. Schneiderman,*
882 F.3d 374 (2d Cir. 2018) ............................................................. 14

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) ............................................................................ 20

*Curley v. Vill. of Suffern,*
268 F.3d 65 (2d Cir. 2001) ............................................................... 15

*D.L. v. Unified Sch. Dist. No. 497,*
392 F.3d 1223 (10th Cir. 2004) ....................................................... 10

*Diamond "D" Constr. Corp. v. McGowan,*
282 F.3d 191 (2d Cir. 2002) ............................................................. 11

*Doe v. University of Ky.,*
860 F.3d 365 (6th Cir. 2017) ........................................................... 11

*Faiveley Transp. Malmo AB v. Wabtec Corp.,*
559 F.3d 110 (2d Cir. 2009) ............................................................. 18

**Cases**                                                                   **Page(s)**

*Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk Cnty.*,
805 F.3d 425 (2d Cir. 2015) .................................................................. 8

*Gilbertson v. Albright*,
381 F.3d 965 (9th Cir. 2004) ............................................................... 10

*Great Am. Fed. Saving & Loan Ass'n v. Novotny*,
442 U.S. 366 (1979) ............................................................................. 15

*Hayes v. Dahlke*,
976 F.3d 259 (2d Cir. 2020) ................................................................ 12

*Henry v. Essex Cnty.*,
113 F.4th 355 (3d Cir. 2024) ............................................................... 15

*Kane v. DeBlasio*,
19 F.4th 152 (2d Cir. 2021) ................................................................... 7

*Nieves v. Bartlett*,
587 U.S. 391 (2019) .............................................................................. 13

*People v. VDARE Found., Inc.*,
224 A.D.3d 516 (1st Dep't 2024) ........................................................... 3

*People v. VDARE Found., Inc.*,
41 N.Y.3d 1009 (2024) ........................................................................... 3

*People v. VDARE Foundation, Inc.*,
246 A.D.3d 527 (1st Dep't 2026) ........................................................... 4

*SAM Party of N.Y. v. Kosinski*,
987 F.3d 267 (2d Cir. 2021) ................................................................ 19

*Spargo v. N.Y. State Comm'n on Jud. Conduct*,
351 F.3d 65 (2d Cir. 2003) ............................................................... 9-10

*Sprint Comm'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013) ................................................................................. 8

| **Cases** | **Page(s)** |
|---|---|

*Tough Traveler, Ltd. v. Outbound Prods.*,
   60 F.3d 964 (2d Cir. 1995) ..................................................................... 16

*VDARE Found., Inc. v. James,*
   162 F.4th 77 (2d Cir. 2025) ......................................................... 3-4, 12

*Wexler v. Lepore,*
   385 F.3d 1336 (11th Cir. 2004) ............................................................ 9

*Worldwide Church of God, Inc. v. State of Cal.,*
   623 F.2d 613 (9th Cir. 1980) ................................................................ 9

*WPIX, Inc. v. ivi, Inc.,*
   691 F.3d 275 (2d Cir. 2012) ............................................................... 19

*Younger v. Harris,*
   401 U.S. 37 (1971) .................................................................... 1, 8, 10

**State Statutes**

N.Y. Estates, Powers & Trusts Law
   § 8-1.4 .................................................................................................. 20

N.Y. Not-for-Profit Corporation Law
   § 112 .................................................................................................... 20
   § 706 .................................................................................................... 20
   § 720 .................................................................................................... 20

**Rules**

Fed. R. App. Pro. 8 ................................................................................... 7

## PRELIMINARY STATEMENT

Movant VDARE Foundation, Inc., a charity governed by New York law, seeks an injunction pending appeal to halt a state-court enforcement action brought by its regulator, the Office of the Attorney General (OAG). This is VDARE's latest of several attempts to use an emergency motion to obtain federal-court intervention against OAG. It is substantively similar to VDARE's prior attempts, and equally ill-founded. VDARE satisfies none of the requirements to obtain an injunction pending appeal.

First, VDARE has not demonstrated any likelihood of success on the merits. Indeed, its newest federal complaint is subject to dismissal as a threshold matter under the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971). Even aside from that threshold deficiency, VDARE cannot establish a likelihood of success based on bare allegations that OAG has targeted it on account of its speech, or conspired with others to do so. Rather, these claims are subject to dismissal on the pleadings. Second, there is no emergency. The mere prospect that VDARE must participate in discovery in the state-court case—which survived VDARE's motion to dismiss—is not irreparable harm. And the public interest strongly favors OAG, as the arm of New York State responsible for

ensuring that charitable corporations conduct their affairs in compliance with state law.

This Court should deny VDARE's emergency motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Attorney General's Investigation and Initiation of a Civil Enforcement Action Against VDARE

OAG began investigating VDARE upon learning that VDARE had purchased a medieval-style castle in West Virginia for approximately $1.4 million and that two VDARE principals, chairman Peter Brimelow and his wife and fellow VDARE director Lydia Brimelow, were using the castle as their private residence. (Complaint, *People v. VDARE Foundation Inc. et al.*, Index No. 452397/2025 (N.Y. Sup. Ct., New York Cnty.), attached as Ex. A at 2, 4, 15-24.) OAG's investigation revealed multiple additional concerns about VDARE's management of its finances, including self-dealing and violations of documentation requirements. (Ex. A at 12-15, 30-33.)

OAG served an investigative subpoena on VDARE to which it objected, declining to provide much of the information sought. As a consequence, OAG initiated a special proceeding in state Supreme Court to

2

compel VDARE's compliance with its subpoena. (*VDARE Found., Inc. v. James*, No. 1:25-cv-00810-MAD-ML, ECF No. 40–1 at 1-2.) VDARE moved to dismiss the proceeding and argued that enforcement of the subpoena would constitute "unconstitutional retaliation." (ECF No. 40–1 at 2.) The state court rejected VDARE's argument and ordered VDARE to comply. (ECF No. 40–1 at 2-3.) VDARE appealed that order, and the New York Appellate Division, First Department, affirmed, holding that there was "no support for [VDARE's] contention that the OAG conceded any retaliatory animus or was targeting it for its protected speech." *People v. VDARE Found., Inc.*, 224 A.D.3d 516, 518 (1st Dep't 2024). The New York Court of Appeals subsequently denied VDARE's motion for leave to appeal. *People v. VDARE Found., Inc.*, 41 N.Y.3d 1009 (2024).

In an attempt to preempt OAG's state-court subpoena litigation, VDARE commenced its first federal lawsuit against OAG, claiming that the subpoena was a means to retaliate against VDARE for its speech, and asking the district court to enjoin the subpoena's enforcement. *See VDARE Found., Inc. v. James*, 162 F.4th 77, 81 (2d Cir. 2025). The district court dismissed that complaint on res judicata grounds because by that point, the state court had already issued a final judgment

granting OAG's petition to compel compliance with the subpoena. *Id.* at 82. VDARE appealed the district court's order to this Court. In May 2025—eight months after this Court heard oral arguments—VDARE sought an injunction barring the state-court subpoena litigation from proceeding pending the outcome of the appeal. 2d Cir. No. 23-1084, Doc. 85. This Court denied VDARE's motion, 2d Cir. No. 23-1084, Doc. 92, and ultimately affirmed the judgment dismissing the first federal case, *VDARE*, 162 F.4th at 80.

VDARE persisted with its refusal to provide the information the subpoena demanded, and as a consequence the state court has held VDARE in contempt and imposed monetary penalties. *See id.* at 82 n.2 (describing some of the state-court contempt orders). The First Department has subsequently affirmed the assessment of those penalties. *See People v. VDARE Foundation, Inc.*, 246 A.D.3d 527 (1st Dep't 2026).

## B.    VDARE's Most Recent Federal Lawsuit

Despite VDARE's efforts to impede OAG's investigation, OAG acquired sufficient information to initiate a civil enforcement action. On September 3, 2025, OAG commenced an action in state Supreme Court against VDARE, Peter Brimelow, and Lydia Brimelow. OAG's action

4

seeks, among other things, restitution, civil penalties, and removal of the Brimelows as VDARE fiduciaries. (Ex. A at 47-49). VDARE moved to dismiss that action on state-law grounds, declining to raise any defenses under federal law. The state court denied that motion in its entirety. (Order on Motion to Dismiss, *People v. VDARE Foundation Inc. et al.*, Index No. 452397/2025 (N.Y. Sup. Ct., New York Cnty.), attached as Ex. B.) VDARE has not appealed from that order, and the time to do so has now expired.

In June 2025, VDARE commenced the federal action that underlies this motion, naming the Attorney General and several OAG employees who were involved in the investigation and the subpoena litigation. VDARE once again alleged that the subpoena violated its First Amendment rights and sought damages. (ECF No. 1 at 35.) On November 24, 2025, nearly three months after OAG had commenced the civil enforcement action, VDARE amended its complaint to add allegations that the state-court action was the latest stage in a conspiracy to abuse state law to target VDARE for engaging in speech with which OAG disagrees. (ECF No. 25 at 40-45.) In addition to the relief it requested earlier,

5

VDARE sought an injunction permanently enjoining OAG's civil enforcement action from continuing in state court. (ECF No. 25 at 49-50.)

Two weeks later, on December 8, 2025, VDARE sought a temporary restraining order enjoining OAG from continuing with the civil enforcement action pending the outcome of its lawsuit, and also sought to expedite consideration of its motion. (ECF No. 33.) The district court denied the motion only insofar as VDARE sought expedited consideration. (ECF No. 35.) OAG subsequently filed papers opposing an injunction and cross-moving to dismiss. (ECF No. 40.) Rather than awaiting a decision on its motion, VDARE took an interlocutory appeal from the order denying expedited consideration. (ECF No. 41.) VDARE has perfected its appeal, and OAG's brief is currently scheduled to be filed by June 9, 2026.

On April 13, 2026, after it already had perfected its appeal, VDARE moved the district court for an injunction a second time, seeking substantially the same relief as it did in its December 2025 motion. (ECF No. 47.) The district court, describing VDARE's second motion as an "end-run around the very order Plaintiff has appealed," denied this motion. (ECF No. 49.) VDARE now seeks the same relief in this Court.

## ARGUMENT

**VDARE IS NOT ENTITLED TO AN INJUNCTION PENDING APPEAL**

VDARE moves under Federal Rule of Appellate Procedure 8 to enjoin OAG from proceeding with its state civil enforcement action pending the outcome of its federal appeal. An injunction pending an appeal is an "extraordinary remedy never awarded as of right." *Agudath Israel of Am. v. Cuomo*, 979 F.3d 177, 179 (2d Cir. 2020). Such injunctions are generally governed by the same standards that govern preliminary injunctions. *See id*. Thus, the Court will consider whether (1) the movant is likely to succeed on the merits; (2) the movant will suffer irreparable harm absent an injunction; and (3) an injunction is in the public interest. *Kane v. DeBlasio*, 19 F.4th 152, 163 (2d Cir. 2021). VDARE has the burden to establish that each of these factors weighs in favor of an injunction. It has failed to do so.

### A.    VDARE Has Failed to Demonstrate a Likelihood of Success on the Merits.

In its amended complaint, VDARE has claimed that OAG's investigation and subsequent enforcement action constitute (1) retaliation against VDARE for engaging in First Amendment protected speech;

7

(2) selective enforcement of New York law; and (3) a conspiracy to violate its civil rights. (ECF No. 25 at 40-45.) None of these claims is likely to reach merits consideration, much less succeed.

### 1. VDARE's entire action is barred under *Younger*.

It is unlikely that the district court will retain jurisdiction over this lawsuit at all. Instead, the district court will likely dismiss the lawsuit in its entirety in accordance with the abstention doctrine recognized in *Younger v. Harris*, 401 U.S. 37 (1971). *Younger* established an exception to the ordinary rule that federal courts must resolve legal disputes within their jurisdiction, regardless of whether a case involving the same subject matter is pending in a state court. *Sprint Comm'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013). *Younger* abstention is limited to three categories of state-court cases, one of which is civil enforcement actions. *Id.* at 78.

At the outset, there is no serious dispute that the state-court case qualifies as a civil enforcement action under *Sprint*. If a state-court case is eligible for *Younger* abstention, then three additional factors are relevant to whether abstention is required. *Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015). These factors are whether the state-court case (1) remains pending,

(2) implicates an important state interest, and (3) affords the plaintiffs an adequate opportunity for judicial review of their federal claims. *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 75 (2d Cir. 2003). All three of these factors are met here as well.

First, the state-court action concededly remains pending; the whole point of VDARE's federal lawsuit is to prevent the state-court action from continuing. Second, the state-court action concerns the misappropriation of charitable assets, which courts have long recognized as an important state interest. *E.g.*, *Worldwide Church of God, Inc. v. State of Cal.*, 623 F.2d 613, 615-16 (9th Cir. 1980). And third, the state-court action affords VDARE an adequate opportunity for judicial review of its federal claims. VDARE pressed its First Amendment claims in state court in an earlier posture, when opposing the enforcement of the subpoena. It also could have pressed these claims in its recently denied motion to dismiss OAG's complaint in state court, but conspicuously declined to do so—a form of gamesmanship that the Eleventh Circuit has described *Younger* abstention as intended to prevent. *See Wexler v. Lepore*, 385 F.3d 1336, 1340 (11th Cir. 2004). VDARE cannot avoid *Younger* abstention by attempting to repackage as affirmative federal "claims" in a federal

9

lawsuit what are most naturally defenses that it could have raised in a state-court motion to dismiss (or for summary judgment).

*Younger* bars exactly the type of interference with the pending state-court litigation that VDARE seeks here. As in *Younger* itself, 401 U.S. at 39, VDARE positions itself as the plaintiff in a federal lawsuit in which it asked the district court to bar the state-court action in which it appears as the defendant. (ECF No. 25 at 49-50.) This relief is the archetypal example of interference in which *Younger* mandates abstention. *See Spargo*, 351 F.3d at 85. Indeed, even VDARE's requests for other relief, such as damages, would work interference with the state-court action because, as presented by VDARE, such relief depends on the federal court's conclusion that that action is meritless. *See Gilbertson v. Albright*, 381 F.3d 965, 982-83 (9th Cir. 2004) (en banc); *see also D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1232 (10th Cir. 2004) (*Younger* abstention is appropriate when the federal plaintiff asks the court to decide the merits of a pending state-court action).

VDARE's only discussion of *Younger* in its papers is to direct the reader to its appellant's brief. (MOL at 14.) Preliminarily, VDARE's use of an emergency motion to require OAG to respond to its brief ahead of

the June 9 deadline aptly illustrates why the district court regarded VDARE's second motion for an injunction as an "end-run" around its appeal. (ECF No. 49.)

Nevertheless, VDARE's *Younger* argument is easily refuted. In its brief, VDARE does not deny that this case satisfies all of the criteria that *Younger* requires for abstention, but instead contends that its lawsuit falls within *Younger*'s exception for state-court litigation that is brought in bad-faith or for the purpose of harassment. (Br. at 20.) The state court has already found OAG's complaint legally sound, observing that OAG's allegations, "if proven, detail[ ] a staggering number of self-aggrandizing transactions with the Brimelows using VDARE as the linchpin for the scheme." (Ex. B at 9.) Against this backdrop, VDARE's conclusory allegation of bad faith falls short of showing that OAG's complaint is so bereft of a legitimate purpose that it could only have resulted from bad faith or harassment. *See Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 200 (2d Cir. 2002); *see also Doe v. University of Ky.*, 860 F.3d 365, 371 (6th Cir. 2017) (conclusory statements are insufficient to establish exception to *Younger* abstention). Far from VDARE being likely to succeed on

11

the merits, its lawsuit will almost certainly be dismissed before a court ever reaches the merits of its claims.

### 2. VDARE is unlikely to succeed on any of its claims.

Even if VDARE could overcome *Younger* abstention, and it cannot, it has not established a likelihood of success on its substantive claims. At the outset, to the extent that any of VDARE's claims question the legality of OAG's subpoena, they are precluded under the doctrine of res judicata, as this Court recently confirmed. *VDARE Found.*, 162 F.4th at 80.

VDARE's claims questioning the legality of the civil enforcement action (ECF No. 25 at 40-44) likewise fail. To prove retaliation, VDARE would need to demonstrate that (1) it engaged in constitutionally protected speech or conduct; (2) OAG took adverse action against it; and (3) there was a causal connection between the protected speech and the adverse action. *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020). Assuming that VDARE engages in protected speech and OAG's civil enforcement action is an adverse action, VDARE cannot demonstrate that OAG commenced that action *because* of VDARE's protected speech. VDARE would need to show that the protected activity was a but-for cause of the adverse action, "meaning that the adverse action against the plaintiff would not have

been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019). A plaintiff may establish this element with direct evidence or "sufficiently compelling" circumstantial evidence. *Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2003).

VDARE has not marshaled any direct evidence that OAG commenced a civil enforcement action against it in retaliation for its speech. And the circumstantial evidence invoked by VDARE was hardly compelling. As it has done in the past, VDARE rests its case on the flawed logic that because OAG officials have spoken out on hate speech and VDARE has been accused by others of being a purveyor of hate speech, its speech *must* be the reason that OAG is proceeding against it. (MOL at 3-5; ECF No. 25 at 8-10, 25-32.) Yet VDARE has not identified a single statement by an OAG official about VDARE's speech. OAG's state-court complaint was not about speech, but VDARE's numerous violations of New York's laws governing charities. Even the press release OAG published announcing commencement of the civil enforcement action spoke solely about VDARE's misappropriation of charitable assets. (Press Release, dated September 3, 2025, attached as Ex. C.) And, as noted above, a state court has reviewed OAG's complaint and concluded that it

13

is legally sound and entitled to proceed. (Ex. B.) As this Court has recognized, a "bare assertion that the Attorney General has a vendetta against [it]" is insufficient to make a showing that OAG would not have taken action against a party but for its speech. *Citizens United v. Schneiderman*, 882 F.3d 374, 385 (2d Cir. 2018).

VDARE gets no further by claiming selective enforcement on the basis that other charitable corporations engaged in wrongdoing without repercussion. (ECF No. 25 at 15-17, 31-36.) To prove selective enforcement, VDARE must present evidence that (1) it was treated differently from a similarly situated comparator and (2) that differential treatment was due to an impermissible consideration, such as to punish for the exercise of a constitutional right. For the reasons described in the preceding paragraph, VDARE has not shown that OAG commenced the civil enforcement action against VDARE because of animus toward its speech or political views. And similar to the selective-enforcement claim rejected in *Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 210-11 (2d Cir. 2004), VDARE's claim does not and cannot point to a single situation where OAG had investigated other charities, verified the existence of wrongdoing similar to that alleged against VDARE, but

14

declined to act. Absent such a showing, VDARE is unlikely to carry its heavy burden to show selective enforcement.

Finally, VDARE's inability to establish a constitutional violation necessarily defeats its derivative claim that OAG officials conspired with the Anti-Defamation League or others to violate its constitutional rights. *See Great Am. Fed. Saving & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979) (noting that § 1985 "is a purely remedial statute" and requires an underlying violation of federal law); *see also Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) (same, as to § 1983 conspiracy claim). In any event, VDARE premised the supposed conspiracy on the presence of OAG and Anti-Defamation League officials at the same conference and their apparent ideological agreement about "hate speech." (ECF No. 25 at 43-44.) There is nothing to suggest that anyone at this conference even mentioned VDARE, however, leaving VDARE unable to do anything more than speculate that OAG conspired with the Anti-Defamation League or anyone else to punish VDARE for its views by commencing a civil enforcement action against it. *See Henry v. Essex Cnty.*, 113 F.4th 355, 363 (3d Cir. 2024). It follows, then, that VDARE cannot come close to showing a likelihood of success on this claim.

## B.     VDARE Has Failed to Demonstrate a Risk of Irreparable Harm.

This Court acknowledges that the prevention of irreparable harm is "the single most important prerequisite" for an injunction. *Care One LLC v. Nat'l Labor Relations Bd.*, 166 F.4th 335, 343 (2d Cir. 2026). For three reasons, VDARE has once again failed to establish a risk of irreparable harm.

First, VDARE's delay in seeking an injunction pending appeal weighs against a finding that it faces a risk of irreparable harm. *See, e.g.*, *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995). Despite VDARE's contentions now that it faces irreparable harm as a result of OAG's civil enforcement action (MOL at 9), VDARE inexplicably waited over three months after OAG served the complaint to seek an injunction. The district court considered that delay in denying expedited consideration. (ECF No. 35.) VDARE responded by taking an interlocutory appeal, which, as the district court later observed (ECF No. 49), only served to prolong the delay as the district court providently awaits this Court's review before taking further action. Relatedly, VDARE did not use its interlocutory appeal to seek an injunction pending appeal in this Court until now, after the state-court action has been underway for over

16

seven months. Where VDARE has not offered a cogent explanation for its inaction during this time—such as changed circumstances giving rise to a genuine emergency—the most natural inference from this inaction is that "there is, in fact, no irreparable injury." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) (quotation marks omitted).

Second, and relatedly, VDARE's attempt at an explanation does not establish harm. According to VDARE, it faces irreparable harm because the state-court action will soon proceed to the discovery phase. (Kelly decl. ¶ 12.) To be sure, the parties' initial disclosures are due on April 28, 2026. (VDARE Motion, Ex. 5.) But VDARE fails to reconcile this date with its warning that it will be irreparably harmed unless the Court decides its motion by *April 24*, 2026 (Kelly decl. ¶ 13)—four days earlier. Further, VDARE declines to elaborate on how production of initial disclosures will harm it at all, particularly when it has been an active participant in the litigation thus far. Indeed, the only reason the state-court case is now in discovery is because a court rejected VDARE's motion to dismiss, a ruling that VDARE has declined to appeal. Without any basis to distinguish VDARE from the countless other defendants who proceed to discovery after their pretrial motions prove unsuccessful,

17

VDARE's assertion of irreparable harm is wholly speculative. *See Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 120 (2d Cir. 2009) (vacating preliminary injunction premised on the district court's speculation of harm to the movant).

Third, any harm that accompanies VDARE's participation in discovery is not irreparable. Like any litigant, VDARE may request an extension of discovery deadlines. OAG does not rule out consenting to such a request, provided VDARE offers a good-faith reason, i.e., something other than reiteration of legal claims courts have already rejected. In fact, the very discovery deadline that VDARE now holds out as the basis for its emergency was the product of an agreement between VDARE and OAG. (Email exchanges, attached as Ex. D.) If VDARE comes to believe during discovery that it should be protected from any particular disclosure—to the extent not addressed already in earlier litigation—it could make an appropriate request to the state court to exempt that document from discovery or to obtain a protective order. And if VDARE is concerned more generally about the cost of discovery, it could seek to recover its litigation costs in the unlikely event that it prevails in the state-court litigation.

18

In short, VDARE has not established that it faces *any* imminent risk of harm that is so irreversible as to justify the extraordinary relief of an injunction barring the ongoing state-court litigation from proceeding pending the outcome of this appeal.

## C. VDARE Has Failed to Demonstrate That a Preliminary Injunction Would Serve the Public Interest.

Finally, VDARE cannot demonstrate that the public interest favors a preliminary injunction. It is the moving party's burden to convince the court that the requested preliminary injunction would not harm the public interest. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 278 (2d Cir. 2012). VDARE bases its public-interest argument on the assumption that its federal lawsuit will vindicate its First Amendment rights. (MOL at 14-15.) For the reasons discussed at length above, VDARE's assumption is incorrect. Even if the equities might favor a party with meritorious First Amendment claims, "that is of no help to a plaintiff like [VDARE] that is not likely to succeed on its First Amendment claim." *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 278 (2d Cir. 2021).

Weighing against an injunction, by contrast, is the strong public interest in ensuring that charities abide by the laws that govern the

19

proper use of their assets, the fiduciary duties of their principals, and financial transparency. The statutory framework that OAG is entrusted to enforce reflects New York's strong public policy of preventing the harm caused by the misappropriation of charitable assets, which affects not only the donors from whom charities solicit funds, but also the beneficiaries to whom those assets are supposed to be devoted. *See* N.Y. NPCL §§ 112, 706, 720; N.Y. EPTL § 8-1.4. An injunction pending appeal would harm these interests by delaying OAG's ability to vindicate them and encouraging federal litigation by other defendants in OAG civil enforcement actions. The circumstances of this case therefore counsel in favor of the exercise of restraint by federal courts in response to a request to use their equitable powers to interfere with States' enforcement of their own laws. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 112 (1983).

Moreover, this is the fifth time that VDARE has claimed that OAG's efforts to discharge its statutory responsibilities require emergency federal intervention. Its earlier attempts consist of (1) a motion for a preliminary injunction to the district court in the subpoena case; (2) a motion to this Court in the appeal from the subpoena case; (3) a motion to the district court in the underlying case; and (4) a second motion to the

20

district court in that case. Despite the denial of all of VDARE's requests and even the imposition of contempt sanctions in state court due to its noncompliance with that court's orders, VDARE continues to repeat arguments already considered and rejected. VDARE's history of repetitious and vexatious motion practice supports the conclusion that injunctive relief would not rectify an emergency, but work unfair delay to OAG and the public it serves. Accordingly, this Court should deny VDARE's motion for an injunction pending appeal.

## CONCLUSION

This Court should deny VDARE's motion for an injunction pending appeal.

Dated:  April 23, 2026
        Albany, New York

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Appellees

By:  */s/ Jonathan D. Hitsous*
     JONATHAN D. HITSOUS
     Assistant Solicitor General

BARBARA D. UNDERWOOD
  *Solicitor General*
JEFFREY W. LANG
  *Deputy Solicitor General*
JONATHAN D. HITSOUS
  *Assistant Solicitor General*
    *of Counsel*

The Capitol
Albany, New York 12224
(518) 776-2044
Jonathan.Hitsous@ag.ny.gov

Reproduced on Recycled Paper

22

## CERTIFICATE OF COMPLIANCE

Pursuant to Rules 27 and 32 of the Federal Rules of Appellate Procedure, Jonathan D. Hitsous, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this document, the document contains 4,173 words and complies with the typeface requirements and length limits of Rules 27(d) and 32(a)(5)-(6).

*/s/ Jonathan D. Hitsous*

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State
of New York,

                              Plaintiff,

                          v.

VDARE FOUNDATION, INC., PETER
BRIMELOW, and LYDIA BRIMELOW,

                             Defendants.

Index No.

**Summons**

Date Index No Purchased:
September 3, 2025

---

TO THE ABOVE NAMED DEFENDANTS:

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue pursuant to CPLR § 503(a) is that Plaintiff is located in New York County, with its address at 28 Liberty Street, New York, New York 10005, and because the office of defendant VDARE Foundation, Inc, is in New York County, as set forth in its certificate of incorporation, pursuant to N-PCL §§ 1110 and 102(a)(11).

Dated:    New York, New York
           September 3, 2025

                                    LETITIA JAMES
                                      Attorney General of the
                                      State of New York

                    By:   */s/ James Sheehan*
                        JAMES SHEEHAN
                        Charities Bureau Chief
                        James.Sheehan@ag.ny.gov
                        28 Liberty Street
                        New York, New York 10005

1

Tel. (212) 416-8401

MEGHAN FAUX, *Chief Deputy Attorney General for Social Justice*
EMILY STERN, *Section Chief, Charities Bureau*
RICHARD SAWYER, *Section Chief, Civil Rights Bureau*
RACHEL FINN, *Assistant Attorney General*
BENJAMIN D. LIEBOWITZ, *Assistant Attorney General*
*Of Counsel*

TO:    VDARE FOUNDATION, INC.
       276 Cacapon Road
       Berkeley Springs, West Virginia 25411

       C/O New York Secretary of State
       One Commerce Plaza, 99 Washington Ave
       Albany, NY 12231-0001

       LYDIA BRIMELOW
       304 Stucco Drive
       Berkeley Springs, WV 25411

       PETER BRIMELOW
       304 Stucco Drive
       Berkeley Springs, WV 25411

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York, | Index No. |
| Plaintiff, | **Verified Complaint** |
| v. | |
| VDARE FOUNDATION, INC., PETER BRIMELOW, and LYDIA BRIMELOW, | |
| Defendants. | |

**TABLE OF CONTENTS**

COMPLAINT ......................................................................................................................................1

THE PARTIES....................................................................................................................................3

JURISDICTION AND VENUE .........................................................................................................5

APPLICABLE LAW ..........................................................................................................................6

I.      The Attorney General's Statutory Authority to Bring Actions to Remove Board
        Members, to Seek an Accounting of Misspent Funds, and to Seek the Dissolution of
        Not-for-Profit Corporations ................................................................................................ 6

II.     Legal Requirements for New York Charities and their Officers, Directors, and Key
        Persons.................................................................................................................................. 7

III.    Registration and Reporting Requirements for New York Charitable Not-for-Profit
        Corporations........................................................................................................................ 10

FACTUAL ALLEGATIONS .............................................................................................................12

IV.     VDARE operates with lax oversight by its board of directors—to the Brimelows'
        personal benefit................................................................................................................... 12

V.      Lydia Brimelow purchased the Castle Complex with the bulk of VDARE's assets and
        conveyed it piecemeal to a network of Brimelow-affiliated corporations........................... 15

VI.     Lydia and Peter Brimelow conveyed the Castle Complex to a network of corporations
        that they established and controlled..................................................................................... 18

VII.    The Brimelows transfer VDARE's charitable funds to BCF and BBB under the guise of
        "lease" payments and "loans."............................................................................................ 22

VIII.   The Brimelows give Lydia Brimelow authority to dispose of VDARE's remaining real
        property interests, and she conveys them to a company associated with her father. ........... 23

IX.     Following regulatory scrutiny by OAG, the Brimelows accelerate funds transfers from
        VDARE to their network of out-of-state corporations. ...................................................... 25

X.      VDARE runs out of money and winds up operations. ........................................................ 27

XI.     BCF continues even after VDARE has ceased operations. ................................................. 28

XII.    VDARE failed to maintain a statutorily satisfactory conflict of interest policy or ensure
        compliance with its conflicts of interest policy. ................................................................. 30

XIII.   VDARE failed to comply with regulatory reporting requirements. ..................................... 30

        a.      Failure to Make Required Annual Filings .................................................................. 30

        b.      VDARE Continues to Solicit Donations Despite Failing to File Annual Reports ..... 31

        c.      Certification of False or Misleading Annual Filings .................................................. 32

THE ATTORNEY GENERAL'S INVESTIGATION AND VDARE'S UNLAWFUL
INTERFERENCE...............................................................................................................................33

i

Case 26-52, Document 20, Calendar 361, Page 34 of 121

CAUSES OF ACTION ........................................................................................................36

FIRST CAUSE OF ACTION For Breach of Fiduciary Duty Under N-PCL §§ 717 and 720 and Removal Under N- PCL §§ 706(d) and 714(c) (Against the Individual Defendants)...................36

SECOND CAUSE OF ACTION For Breach of EPTL § 8-1.4 (Against the Individual Defendants)............................................................................................................................37

THIRD CAUSE OF ACTION  Wrongful Related-Party Transactions  N-PCL §§ 112(a)(10), 715(f) and EPTL § 8-1.9(c)(4).....................................................................................................38

FOURTH CAUSE OF ACTION For Loans in Violation of N-PCL § 716 (Against the Individual Defendants)............................................................................................................................40

FIFTH CAUSE OF ACTION Wrongful Related-Party Transactions – N-PCL §§ 112(a)(10), 715(f) and EPTL § 8-1.9(c)(4)....................................................................................................41

SIXTH CAUSE OF ACTION For Breach of EPTL § 8-1.4 (Against Defendant VDARE)..42

SEVENTH CAUSE OF ACTION Illegal Solicitation of Donations Under Executive Law §§ 172, 172-b, 172-d(10) and 175(2)(d) and N-PCL §§ 112 and 115 ........................................43

EIGHTH CAUSE OF ACTION For False or Deficient Filings Under Executive Law §§ 172, 172-b 172-d(1) and 175(2)(d)...................................................................................................43

NINTH CAUSE OF ACTION Failure to Obtain Court of OAG Approval for the Sale of BBB as Required by N-PCL §§ 510, 511, 511-a .....................................................................44

TENTH CAUSE OF ACTION Dissolution of VDARE – N-PCL §§ 112(a)(1), 112(a)(5), 520, 1101(a)(2) ...............................................................................................................................45

ELEVENTH CAUSE OF ACTION Dissolution of VDARE– N-PCL §§ 112(a)(7), 1102(a)(2)(D).........................................................................................................................46

PRAYER FOR RELIEF ....................................................................................................47

VERIFICATION................................................................................................................50

ii

Case 26-52, 04/23/2026, Document 30.1, Page35 of 121

The People of the State of New York, by their attorney, Letitia James, Attorney General of the State of New York, allege the following:

## COMPLAINT

1.      The Attorney General brings this action pursuant to the New York Not-for-Profit Corporation Law ("N-PCL"), the Estates, Powers and Trust Law ("EPTL"), and the New York Executive Law ("Exec. L.") against Defendant VDARE Foundation, Inc. ("VDARE"), a New York charitable not-for-profit corporation; its founder and former-Chairman, Chief Executive Officer, and President, Defendant Peter Brimelow; and the corporation's current President (and Peter Brimelow's wife), Defendant Lydia Brimelow (together with Peter Brimelow, the "Brimelows" or "Individual Defendants"), for violating the laws governing charitable not-for-profit corporations and their fiduciaries.

## PRELIMINARY STATEMENT

2.      The Attorney General seeks restitution and penalties for Peter and Lydia Brimelow's misuse of VDARE's charitable assets. The Attorney General also seeks the formal dissolution of VDARE, which announced that it ceased operations after the Brimelows transferred VDARE's most valuable assets to other organizations under their control. Despite announcing its voluntary closure, VDARE has continued to solicit donations in violation of New York law.

3.      VDARE was founded as a New York charitable not-for-profit. Like all such entities, VDARE has obligations under New York law to spend charitable assets consistent with its mission.

4.      For years, however, the Brimelows have run VDARE as a self-proclaimed "mom-and-pop operation[]" for their own benefit with little regard for corporate formalities meant to protect its charitable assets. For its entire existence, VDARE's board of directors has consisted of

1

Case 26-52, 04/23/2026, Diktary: 361, Page36 of 121

Peter Brimelow, his wife and other family members or Peter Brimelow's close friends. This tightly controlled board consistently overlooked or rubber-stamped self-dealing by the Brimelows.

5.      Peter Brimelow, who is now in his 70s, has described the nonprofit VDARE as an asset that "I had hoped to leave to my young wife and our children after I am gone." Consistent with that misguided view, the Brimelows took advantage of the board's lax oversight to enrich themselves at VDARE's expense. Since 2019, working with Lydia Brimelow's father, the Brimelows have orchestrated a scheme whereby they transferred the bulk of VDARE's charitable assets to a network of out-of-state corporations they control.

6.      In 2020 the Brimelows used $1.4 million of VDARE's funds to purchase a medieval-style castle and its grounds in Berkeley Springs, West Virginia (the "Castle" or "Castle Complex"), where they set up residence for themselves and their family members. While they continued to reside on the property, they then transferred it—VDARE's most valuable asset—to two West Virginia corporations controlled by the Brimelows. These transfers were never approved by independent, disinterested directors, as required by law.

7.      After conveying the Castle Complex, VDARE continued transferring funds to and from the other Brimelow-controlled entities in the form of "rent," "loans," purported mortgage payments, and other transfers. In all, VDARE transferred over a million dollars in charitable funds to Brimelow-controlled entities. Like the Castle transfer, these payments were made without independent director approval as required by law.

8.      As the final step in the Brimelows' shell game, VDARE transferred its remaining interest in the Castle Complex to yet another out-of-state, for-profit entity affiliated with a VDARE insider—Lydia Brimelow's father. This transfer happened without adequate consideration or independent board approval.

2

9.      The Brimelows then announced that VDARE would cease operations entirely and closed its website.  When ceasing operations, the board had a duty to dissolve VDARE in accord with the law. Nonetheless, VDARE continues to seek contributions and has not sought approval to dissolve from the Attorney General or the Court, as required by law.

10.     At the time that VDARE ceased operations, it had conveyed over $1.7 million in cash and real estate assets to an out-of-state not-for-profit run by Lydia Brimelow.

11.     For more than three years, VDARE has actively impeded a lawful regulatory investigation by the New York Office of the Attorney General ("OAG") into those transactions and its governance and finances. OAG has the statutory obligation to ensure VDARE's compliance with New York law. But, in response to an OAG investigatory subpoena, issued after the Castle transfers, VDARE spent years delaying a response and fighting the subpoena in court. Despite court rulings rejecting its challenges to the subpoena—and two contempt findings issued by this Court—VDARE remains in violation of its obligations to comply with OAG's subpoena. It owes tens of thousands of dollars in contempt penalties, which it has not begun to pay, and contempt fines are still accruing.

12.     Despite VDARE's efforts at interference and concealment, OAG uncovered ample evidence that for years the Brimelows have improperly controlled the operations of VDARE and a network of related entities; flouted the corporate form; and repeatedly violated New York law designed to protect charitable assets. Based on this investigation, the Attorney General now brings this action on behalf of the People of New York for restitution, penalties, and the dissolution of VDARE's now, and self-declared, defunct corporation.

## THE PARTIES

13.     Plaintiff is the People of the State of New York, by the Attorney General. The Attorney General is responsible for overseeing the activities of New York charities and not-for-

3

Case 26-52, 04/23/2026, Document 361, Page38 of 121

profit organizations and the conduct of their officers, directors, and key persons, in accordance with the N-PCL, EPTL, and Executive Law.

14. Defendant VDARE was initially incorporated in December 1999 as "The Lexington Research Institute, Ltd," a Type B corporation under the N-PCL and changed its name to VDARE Foundation, Inc. in or around 2006 (as used in this complaint, "VDARE" refers to the corporation under either name). It is a charitable not-for-profit corporation organized under the laws of the State of New York. Pursuant to VDARE's certificate of incorporation, "the office of the Corporation shall be in New York County." VDARE engages in fundraising throughout the United States, including in New York. VDARE is classified as a public charity under Section 509(a)(1) of the Internal Revenue Code and has been recognized as tax-exempt under Section 501(c)(3) of the Internal Revenue Code by the IRS since in or around May 2001.

15. Defendant Peter Brimelow was a founder of VDARE in 1999 and, at all times relevant herein an officer, director or "key person" within the meaning of N-PCL § 102(a)(25), having held the positions of director, board chairman, Chief Executive Officer, and President, until July 2024. Brimelow remains involved in VDARE's affairs.

16. Defendant Lydia Brimelow has held numerous titles and roles at VDARE and was, at all times relevant herein an officer, director or "key person" within the meaning of N-PCL § 102(a)(25), and held the positions of VDARE Chief Advancement Officer, Treasurer, Secretary, President, Chief Operating Officer, and Publisher.

17. Peter and Lydia Brimelow maintain an office at The Berkeley Springs Castle, 276 Cacapon Road, Berkeley Springs, WV 25411, and reside on the premises of the Berkeley Springs Castle Complex at 304 Stucco Drive, Berkeley Springs, WV 25411.

4

Case 26-54, 04/23/20/26, Dkt. entry: 301.3 Page 39 of 121

## JURISDICTION AND VENUE

18.     This Court has subject-matter jurisdiction over the claims in this suit pursuant to the N-PCL, EPTL, and Executive Law.

19.     This Court has personal jurisdiction over VDARE pursuant to the N-PCL, EPTL, and Executive Law because it is a New York charitable not-for-profit corporation and has purposely availed itself of the opportunity to do business, solicit funds, and serve its charitable mission and beneficiaries in New York.

20.     This Court has personal jurisdiction over defendants Peter Brimelow and Lydia Brimelow (the "Individual Defendants") pursuant to N-PCL § 309 because "by becoming a director, officer, key person or agent of a corporation [each Individual Defendant] is subject to the personal jurisdiction of the supreme court of the state of New York, and in an action or proceeding by the attorney general under [the N-PCL] the process may be served….as provided in [CPLR § 313]."

21.     This Court also has personal jurisdiction over the Individual Defendants pursuant to CPLR § 302(a) because in their roles as officers, directors, and key persons of VDARE, they have transacted business within the state on behalf of a New York chartered not-for-profit corporation and purposefully availed themselves of the privileges and protections, and assumed the obligations, of New York law. Plaintiff's claims in this matter as alleged herein against each of the Individual Defendants arise out of the Individual Defendants' purposeful conduct and transaction of business in New York, and each of the Individual Defendants' conduct has caused harm in New York.

22.     Venue is properly set in New York County pursuant to (a) CPLR § 503 because the Attorney General has an office in the county; and (b) N-PCL §§ 1110 and 102(a)(11), because the office of VDARE is in New York County as set forth in the VDARE's certificate of incorporation.

5

Case 26-52, 04/23/2026, DktEntry: 36.1, Page40 of 121

## APPLICABLE LAW

**I.     The Attorney General's Statutory Authority to Bring Actions to Remove Board Members, to Seek an Accounting of Misspent Funds, and to Seek the Dissolution of Not-for-Profit Corporations**

23.    The Attorney General has a wide range of supervisory powers over charitable not-for-profit corporations organized under the laws of New York State, and over the trustees of property held for charitable purposes.

24.    The Attorney General's regulatory oversight of charitable not-for-profit corporations, and their officers, directors, and key persons, includes the authority to bring actions under Section 112 and Article 7 of the N-PCL to remove officers and directors for cause, including for breach of their fiduciary duties; obtain relief as a result of prohibited related party transactions; and enforce any right given to an officer or a director of a charitable corporation. N-PCL §§ 112, 706(d), and 714(c)

25.    New York law further provides the Attorney General with supervisory authority pursuant to the EPTL over "trustees for charitable purposes," which includes "any individual, group of individuals, executor, trustee, corporation or other legal entity holding and administering property for charitable purposes" and "any non-profit corporation organized under the laws of this state for charitable purposes." EPTL § 8-1.4. The Attorney General has the legal authority "to institute appropriate proceedings…to secure the proper administration of any trust, corporation, or other relationship to which this section applies." EPTL § 8-1.4(m).

26.    The Attorney General is authorized to regulate and investigate trustees and the trustees' administration of property held for charitable purposes, and that authority "shall apply regardless of any contrary provisions of any instrument and shall be liberally construed so as to

6

effectuate its general purpose of protecting the public interest in charitable uses, purposes and dispositions." EPTL § 8-1.4(n).

27.     Under Article 11 of the N-PCL, the Attorney General may bring an action or special proceeding to dissolve a not-for-profit corporation where the corporation has exceeded the authority conferred upon it by law; carried on, conducted or transacted its business in a persistently fraudulent or illegal manner, or by the abuse of its powers contrary to public policy of the state; where the directors or members in control of the corporation have looted or wasted the corporate assets, have perpetuated the corporation solely for their personal benefit, or have otherwise acted in an illegal, oppressive or fraudulent manner; or where the corporation has willfully failed to file annual reports mandated by law. N-PCL §§ 112(a)(1), 112(a)(5), 112(a)(7), 520, 1101(a)(2), 1102(a)(2).

**II.     Legal Requirements for New York Charities and their Officers, Directors, and Key Persons**

28.     The duties, powers, and responsibilities of VDARE as a charitable not-for-profit corporation, and of VDARE's officers, directors, and key persons are governed by the EPTL, N-PCL, and Executive Law.

29.     Pursuant to EPTL § 8-1.4 trustees overseeing the administration of charitable assets, like VDARE and the Individual Defendants, must properly administer those assets.

30.     Pursuant to N-PCL §§ 701, 713 and 714, a not-for-profit corporation "shall be managed by its board of directors," which has the power to elect officers and remove them, with or without cause. Under N-PCL § 702(a), "[t]he number of directors constituting the entire board shall be not less than three."

31.     Pursuant to N-PCL § 717(a), directors, officers and key persons of a not-for-profit corporation such as VDARE are required to "discharge the duties of their respective positions in

7

Case 26-52, 04/23/2026, Diketary 161, Page42 of 121

good faith and with the care an ordinarily prudent person in a like position would exercise under similar circumstances."

32.     Under N-PCL § 720, directors, officers, or key persons may be compelled to account for the "neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge" or "[t]he acquisition by himself, transfer to others, loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties."

33.     As a New York not-for-profit corporation, VDARE may only "pay compensation in a reasonable amount" to officers, directors, or members for services actually rendered. N-PCL § 515(b). "No person who may benefit from such compensation may be present at or otherwise participate in any board or committee deliberation or vote concerning such person's compensation[.]" *Id.*

34.     As a New York not-for-profit corporation, VDARE is barred by law from paying dividends and from distributing "any part of its income or profit to its members, directors, or officers." N-PCL § 515(a). Such distributions exceed the authority conferred upon VDARE by law, is beyond the capacity or power of VDARE under the N-PCL, and could subject it to annulment or dissolution under Sections 112(a)(1) and 1101(a)(2) of the N-PCL.

35.     Under N-PCL § 715 and EPTL § 8-1.9, as a charitable not-for-profit corporation VDARE is prohibited from entering into any related party transaction unless the transaction is determined and documented by the non-interested members of the Board, or an authorized committee of the Board, to be fair, reasonable, and in the corporation's best interest at the time of the determination.

8

36. Related parties include any director, officer, or key person of the corporation or any affiliate of the corporation; their relatives; or any entity in which any of them has a thirty-five percent or greater ownership or beneficial interest. N-PCL § 102(23); EPTL § 8-1.9(a)(6). A related party transaction includes "any transaction, agreement or any other arrangement in which a related party has a financial interest and in which the corporation or any affiliate of the corporation is a participant." N-PCL § 102(24); EPTL § 8-1.9(a)(8).

37. In addition, every director, officer, trustee, or key employee who has an interest in a related party transaction must disclose in good faith to the board, or an authorized committee of the board, "the material facts concerning such interest," and the corporation must conduct a process to determine whether the transaction is fair, reasonable, and in the corporation's best interest before approving a related party transaction and document that process. N-PCL § 715; EPTL § 8-1.9. No related party may participate in deliberations or voting relating to a related party transaction in which he or she has an interest. N-PCL § 715(h); EPTL § 8-1.9(c)(6).

38. The Attorney General may bring an action to enjoin, void or rescind any related party transaction and seek restitution, including but not limited to, an amount up to "double the amount of any benefit improperly obtained" in the case of "willful and intentional conduct." N-PCL § 715(f)(4); EPTL § 8-1.9(c)(4).

39. Similarly, under New York Law, VDARE's board of directors is required to adopt, implement, and assure compliance with a conflict of interest policy that ensures that VDARE's trustees, directors, officers and key persons act in the corporation's best interest and comply with applicable legal requirements, including those concerning related party transactions. N-PCL § 715-a; EPTL § 8-1.9(d)(1). The policy must provide for annual conflict of interest disclosures by trustees and directors, and procedures for the disclosure and determination of conflicts of

9

interest, which must prevent the person with the conflict from influencing the determination of the transaction giving rise to the conflict. *Id.* The policy also imposes recordkeeping requirements on the existence and resolution of conflicts. *Id.*

40.     Under N-PCL §§ 510, 511, and 511-a, as a charitable not-for-profit corporation VDARE is required to obtain approval of this Court or the OAG prior to any selling or otherwise disposing of "all, or substantially all, of its assets." N-PCL §§ 510.     When evaluating an application by a not-for-profit corporation to engage in a transaction concerning all, or substantially all, of its assets OAG or a court will consider whether "the consideration and the terms of the transaction are fair and reasonable to the corporation and that the purposes of the corporation or the interests of the members will be promoted." N-PCL §§ 511, 511-a.

### III.     Registration and Reporting Requirements for New York Charitable Not-for-Profit Corporations

41.     Under New York law, certain charitable not-for-profit organizations, including VDARE, holding charitable assets and operating in New York must register and file accurate and complete annual reports with the Attorney General. *See* EPTL §§ 8-1.4(d) and (f). The Charities Bureau oversees that function on behalf of the Attorney General. In addition to the registration and reporting requirements set forth in EPTL § 8-1.4, charitable organizations soliciting contributions in New York must also register and file accurate and complete annual reports under Article 7-A of the Executive Law. *See* Exec. L §§ 172, 172-b.  Organizations that must file reports under the EPTL and Executive Law do not need to file duplicate reports, but rather indicate that they are a dual filer when they make the filings. These annual reports, commonly referred to as CHAR500s, must include copies of an organization's annual information return, the IRS Form 990, and, for organizations like VDARE that receive in excess of $1 million in donations, copies of the organization's audited financial statements. *Id.*

10

Case 26-52, Document 2023, Library 361, Page 45 of 121

42. Section 520 of the N-PCL specifically refers to the requirement under the EPTL and Executive Law to file these reports and provides that the willful failure to do so is a breach of a director's fiduciary duty and provides grounds for the Attorney General to seek dissolution of the organization. Similarly, Section 172-b(5) of the Executive Law provides that the Attorney General shall cancel the registration of any organization that fails to file the reports that are required under the Executive Law.

43. CHAR500s must be signed by: (i) the organization's President or Authorized Officer and (ii) its Chief Financial Officer or Treasurer, both of whom, by their signatures expressly certify, under penalties of perjury, that the report, including all attachments, is true and accurate. Exec. L § 172-b

44. Moreover, a charity that is not in compliance with its annual filing obligations is prohibited from soliciting donations. Exec. L. §172-d(1); N-PCL § 115(a). Pursuant to Executive Law § 172-d, no person shall "[m]ake any material statement which is untrue in…[a] financial report or any other forms or documents required to be filed" with the Attorney General's office pursuant to Executive Law, Article 7-A.

45. Pursuant to Executive Law § 175(2), the Attorney General is authorized to bring an action against a charitable organization or any other persons acting for or on its behalf, to, in relevant part, "enjoin such organization and/or persons from continuing the solicitation or collection of funds or property or engaging therein or doing any acts in furtherance thereof, and to cancel any registration statement previously filed with the attorney general pursuant to this article and for an order awarding restitution and damages, penalties and costs; and removing any director or other person responsible for the violation of this article; dissolving a corporation and other relief which the court may deem proper, whenever the [A]ttorney [G]eneral shall have reason to believe

11

that the charitable organization or other person: (a) is violating or has violated any of the provisions of [Executive Law Article 7-A], (b) has refused or failed, or any of its principal officers has refused or failed, after notice, to produce any records of such organizations; [or] . . . (d) has made a material false statement in an application, registration or statement required to be filed pursuant to this article[.]"

**FACTUAL ALLEGATIONS**

IV.     **VDARE operates with lax oversight by its board of directors—to the Brimelows' personal benefit.**

46.     Since VDARE's inception in December 1999, VDARE's board of directors has consisted entirely of relatives of VDARE's founder Peter Brimelow or his close friends.

47.     As relevant to this complaint, in 2019, VDARE's board consisted of five members. Three were Brimelows—Peter, Lydia, and Peter's brother John. The other two were Peter Brimelow's longtime friends.

48.     VDARE's bylaws require the board to appoint five corporate officers. Since at least 2019, all corporate officers appointed to VDARE's board have been Brimelows.

49.     Because Brimelow family members held a voting majority on VDARE's board and every officer role, they effectively directed VDARE's operations without independent oversight. In Lydia Brimelow's words, VDARE was a "mom-and-pop" shop run by Peter and Lydia Brimelow.

50.     Since at least 2019, annual board meetings have been perfunctory when they have happened at all. At a typical board meeting, after unopposed re-elections of the directors and officers, Peter Brimelow or Lydia Brimelow provided a short presentation regarding VDARE's activities and affairs and made peremptory requests for a voice vote on whatever corporate action was sought, including budget approvals and officer compensation approvals. The board typically

12

granted those requests without any inquiry into the topic at issue or consideration of relevant materials. A former board member testified that he "did not prepare" for board meetings.

51. Important information such as VDARE's annual IRS Form 990 disclosures, tax information, donor reports and financial reports were not provided to directors in advance of meetings, or in advance of filing, but were made "available upon request."

52. Upon information and belief, directors did not request further information beyond the limited presentations by Peter and Lydia Brimelow at each meeting.

53. One consequence of this lax oversight was that Peter and Lydia Brimelow could effectively determine their own compensation and how it was paid to them. Since at least 2019, Peter and Lydia Brimelow repeatedly voted on their own compensation in violation of the N-PCL and VDARE's own conflict of interest policy.

54. For each of the years between 2019 and 2022, Peter Brimelow's reported compensation was VDARE's largest non-capital expense by far. During that period alone, VDARE reported $1,100,064 in compensation to Peter Brimelow. Its reported program activity expenses in that period totaled approximately $3,137,240, and Peter Brimelow's compensation constituted 35%.

55. Notably, in VDARE's 2023 IRS Form 990 it discloses $25,000 in "Reportable compensation" from VDARE to Peter Brimelow, yet records show VDARE transferred over $280,000 to him in 2023.

56. A second consequence of this lax board oversight is that Peter and Lydia Brimelow were able to structure their compensation through a now-defunct for-profit Connecticut corporation they owned called Happy Penguins.

13

Case 26-52, 04/23/20, Dkt. Entry 36.1, Page 48 of 121

57. Until its dissolution in 2022, Peter and Lydia Brimelow were the only beneficial owners of Happy Penguins. Because Happy Penguins was entirely owned by VDARE insiders, it would qualify as a related party under the N-PCL and EPTL. And because Happy Penguins was a related party, its transactions with VDARE had to be evaluated and approved by non-interested members of VDARE's board—in this case, the two non-Brimelow board members.

58. But VDARE's board did not review or approve VDARE's transactions with Happy Penguins. At least one of those non-Brimelow board members did not even know Happy Penguins existed.

59. Between 2019 and 2022, VDARE paid Happy Penguins at least $1,187,000.00.

60. In turn, Happy Penguins "leased" to VDARE the services of Peter Brimelow, VDARE's then -president, and compensated both Peter and Lydia Brimelow for their work for VDARE.

61. In August 2021, an independent accountant and auditor flagged those transactions for Lydia Brimelow and her assistant and warned that VDARE needed a leased-employee agreement with Happy Penguins to ensure that payments to the Brimelows were "arms-length" transactions.

62. VDARE never acted upon the accountant's advice and never entered into a contract with Happy Penguins. The board of directors did not discuss the advice at their annual meeting.

63. From well before 2019 and until 2020, VDARE also "leased" space from Happy Penguins—consisting of "offices" in the Brimelows' Connecticut home. VDARE paid both Happy Penguins and the Brimelows directly for monthly rent, utilities, and, upon information and belief, repairs to the Brimelows' home. Those payments also accrued to the Brimelows' benefit. Again,

14

the non-Brimelow members of VDARE's board of directors did not review those transactions to determine whether they were fair, reasonable, and in the best interests of the organization.

64.     And in May 2023, after its dissolution, Happy Penguins made a final distribution to Peter and Lydia, with each receiving a 50% share of Happy Penguins' remaining funds.

65.     No inquiry or determination was made at any time by VDARE's non-Brimelow board members as to whether compensation to Peter and Lydia Brimelow was fair, reasonable, and in the best interests of the organization.

66.     Nor did the non-Brimelow board members make any inquiry or determination at any time about whether VDARE's financial relationship with Happy Penguins was fair, reasonable, and in the best interests of the organization.

67.     Still another consequence of the lax board oversight was that the Brimelows received even more benefits from VDARE that were not properly disclosed to or approved by VDARE's board. For example, VDARE paid thousands of dollars for the Brimelows' domestic and international travel, meals, and entertainment and club memberships.

68.     No inquiry or determination was made at any time by the non-Brimelow directors of VDARE's board as to whether those payments to Peter and Lydia Brimelow were for legitimate business purposes, reasonable, or in service of VDARE's mission.

**V.      Lydia Brimelow purchased the Castle Complex with the bulk of VDARE's assets and conveyed it piecemeal to a network of Brimelow-affiliated corporations.**

69.     At least as early as January 2019, Lydia Brimelow explored purchasing a medieval-style castle in Berkeley Springs, West Virginia. She told a realtor marketing the property that she wanted to use the Castle Complex to "house [VDARE's] offices and host conferences."

70.     Lydia toured the property in May 2019, which is comprised of the main castle and several parcels of land, including three cottages. At the time, she considered the seller's asking

15

Case 26-52, 04/23/2026, DktEntry: 36.1, Page 50 of 121

NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 09/03/2025

price of more than one million dollars to be "overpriced by several hundred thousand dollars." That summer, she made a cash offer of $700,000 without the knowledge or approval of VDARE's board. The seller did not accept Lydia's unauthorized offer.

71.    On January 17, 2020, months after first offering to buy the Castle Complex, Lydia called a special meeting of the board to "discuss[] the possibility of a real estate opportunity for VDARE."



*Fig. 1 An undated photograph of Berkeley Springs Castle*

72.    VDARE has produced no minutes of this meeting, but Lydia subsequently reported to her father that all board members "seem[ed]" in favor but that some wanted to know "how long do they have to change their minds" after an offer.

16

73.    At the time of the purchase, the board was not informed that the Brimelows' intended to move into the Castle that VDARE had purchased—which they did seven months after the purchase.

74.    At the time of the purchase, the board was not informed of any plans to change VDARE's corporate structure to transfer the castle property to legal entities other than VDARE—a plan the Brimelows began to orchestrate within three months of the purchase.

75.    The Board never considered an independent appraisal or market valuation of the property to determine whether the purchase price was fair, reasonable, and in the best interests of the organization. The Board considered no alternative proposals or alternative properties, and it studied the proposed transaction for just a few days.

76.    One of two non-Brimelow directors, admittedly "not a real estate person," and "not the person to ask for comparables" did his own searches, but never asked for, and never received an appraisal or valuation of comparable property from VDARE.

77.    On or around January 21, 2020, VDARE submitted an offer to purchase the Castle for $1,300,000. This offer reflected an increase of $600,000 over Lydia's original offer, despite her prior assessment that the property was significantly overpriced.

78.    On January 23, 2020, the seller countered at $1,400,000.

79.    In response, one of VDARE's two non-Brimelow directors suggested that VDARE "split the difference," and offer $1,350,000. Instead, Lydia spoke on the phone with that director, Peter Brimelow, and John Brimelow and then sent an email to the board "to confirm that we are all in agreement, and we will accept the counter. Please all respond to this email with the affirmative so I have record of the board's position." Only one non-Brimelow director concurred

17

Case 26-51, 04/23/2026, Document 101, Page52 of 121

in writing. VDARE's second non-Brimelow director played no part in the decision to purchase the castle.

80.     On or around February 14, 2020, the transaction closed and VDARE's purchase of the Berkeley Springs Castle Complex was complete.

81.     The Castle Complex—which served as VDARE's headquarters—represented at least between 30% and 40% of VDARE's assets during fiscal year 2020.

82.     On March 27, 2020, the only non-Brimelow director who approved the Castle Complex purchase resigned from the board. He did so shortly after refusing to sign a non-disclosure agreement. His departure left VDARE with just one non-Brimelow director, who rarely attended board meetings and was not involved in the Castle Complex purchase.

83.     The Brimelows moved into the Berkeley Springs Castle on September 18, 2020, while waiting for the completion of renovations at what they now claim is their permanent residence in a cottage elsewhere in the Castle Complex. The Brimelows' residency in the Castle was not reviewed or approved by the board.

## VI.     Lydia and Peter Brimelow conveyed the Castle Complex to a network of corporations that they established and controlled.

84.     Throughout 2019, Lydia received business advice from her father, Joe Sullivan, who claims to specialize in "corporate renewal." A later engagement letter between Sullivan's company and VDARE explains that he was expected to "[e]ngage in [d]ue [d]iligence relating to [VDARE's] existing structure" and "[p]repare proposals to organize, collapse or merge affiliated entities."

85.     As Lydia's father, Sullivan qualified as a related party under the N-PCL and EPTL, and VDARE's transactions with him and his businesses required approval of a majority of independent board members. Between October 2019 and December 2024, VDARE paid Sullivan's

18

firm, Joe Sullivan & Associates ("JSA"), more than $230,000 for services, including more than $40,000 for services in 2020.

86. None of the payments to JSA were documented and approved by VDARE's board or any non-Brimelow directors. There is no indication the services JSA provided were unique, and yet there is no evidence that VDARE considered alternative financial consultants. There is also no evidence that the board made a finding that the transactions were fair, reasonable, and in the best interest of VDARE.

87. The IRS Form 990 requires nonprofits to answer whether they engaged any business transaction with a current or former director's family member or their businesses. Yet, despite paying Lydia Brimelow's father tens of thousands of dollars in fiscal years 2019, 2020, 2021, 2022, and 2023 VDARE responded "No" in each of the relevant Form 990s.

88. The non-Brimelow members of VDARE's board did not approve or even know about VDARE's financial relationship with Sullivan. Nor did at least one non-Brimelow board member know that Sullivan was Lydia Brimelow's father.

89. Consequently, the non-Brimelow members of VDARE's board did not determine whether VDARE's transactions with Sullivan were fair, reasonable, and in the best interests of the organization.

90. VDARE has acknowledged that Lydia's communications with her father are responsive to OAG's regulatory subpoena but has withheld the restructuring advice he gave in 2019 and 2020. On May 1, 2020, at an eight-minute board meeting with only Peter, Lydia, and John Brimelow present, the three Brimelows approved establishing a new "corporate structure for Berkeley Castle" and conveying the Castle Complex to newly created corporations. With only the three Brimelows voting, the motion passed unanimously.

19

91.     No non-Brimelow director was present or authorized creating a separate corporate structure or conveying the Castle Complex. And the meeting minutes indicate no discussion whatsoever of the purpose of adopting this new corporate structure or how it would serve the mission or interests of VDARE.

92.     Two months later, at a July 2020 board meeting lasting 12 minutes and attended only by Peter, Lydia, and John Brimelow, Lydia became VDARE's "President, Chief Operating Officer, Publisher, and Treasurer," with "full operating authority over all non-editorial aspects of VDARE Foundation and its affiliates and subsidiaries, including without limitation, all non-editorial personnel vendors and contractors, all property tangible or intangible, meetings and functions, fundraising, and all of the functions of the Treasurer as stated in the By-laws." No non-Brimelow director voted on this decision.

93.     On July 21, 2020, Lydia Brimelow incorporated BBB, LLC, as a single-member, for-profit West Virginia corporation, purportedly owned by VDARE, with its principal place of business listed as the Castle Complex's address. On its registration documents and its operating agreement BBB stated that its business purpose was leasing real estate. At all relevant times, Lydia was BBB's sole manager and sole employee.

94.     On or about the same day, Lydia Brimelow incorporated Berkeley Springs Castle Foundation ("BCF"), a West Virginia not-for-profit corporation with its principal place of business listed as the Castle Complex's address.

95.     At all relevant times, the Brimelows and their relatives have comprised the majority of the BCF Board. The Brimelows' relatives on BCF's Board have included John Brimelow and Peter Brimelow's adult children, Hannah Claire and Alexander Brimelow. The Brimelows' part-time babysitter/part-time VDARE support staff member, Dana Coe, was also on the BCF

20

Case 26-52, 04/23/2026, Document 361, Page35 of 121

Board. Lydia Brimelow has served as BCF's President and Treasurer since 2020, and Peter Brimelow has served as BCF's Vice President and/or Secretary.

96. On December 29, 2020, VDARE conveyed several parcels of the Castle Complex to BCF, including the Castle itself and its grounds. BCF made no down payment. The only consideration it provided was the promise of $1,081,660.77 secured by a promissory note and deed of trust.

97. On that same day, December 29, 2020, VDARE conveyed the remaining parcels of the Castle Complex to BBB, including three cottages and additional parcels of undeveloped land. BBB made no down payment. The only consideration it provided was a promissory note and a deed of trust for $310,000. The Brimelows currently use one of the three cottages as their residence, and another is occupied by Peter Brimelow's adult daughter.

98. No independent directors approved the transfers from VDARE to BCF or BBB, and the board did not consider whether the sales would advance VDARE's mission, whether the sales were in VDARE's best interest, or any alternative transactions and no contemporaneous documentation was made stating the basis for the board's approval of the transactions.



**Fig. 2: Lydia Brimelow conveyed the Castle Complex to BCF and BBB in exchange for deeds of trust.**

21

99. In 2021, VDARE's bookkeeper continued describing "the Castle" as VDARE's major asset even while noting that it was "sold to a related entity in 2020 to manage liability issues."

### VII. The Brimelows transfer VDARE's charitable funds to BCF and BBB under the guise of "lease" payments and "loans."

100. After receiving the deed to the Castle, the Brimelow-controlled entity BCF leased the building back to VDARE and charged VDARE a monthly rent greater than BCF's monthly mortgage payments to VDARE. Lydia Brimelow signed the lease on behalf of both BCF as landlord and VDARE as tenant.

101. Starting in February 2021, BCF made monthly "mortgage" payments of $4,700.98 to VDARE. But VDARE paid "rent" to BCF of $6,000 per month. The net result was a loss for VDARE of $1,299.02 each month to the benefit of BCF.

102. In addition to rent, the lease required VDARE to pay BCF a "Special Use Fee" for special events and an additional charge per guest attending any special event.

103. Under the lease, VDARE remained responsible for all expenses and taxes on the Castle. Lydia also added a clause to the standard lease authorizing VDARE, as tenant, to reimburse BCF "based on actual expenses as represented by landlord without [sic] estimate."

104. Ultimately, between 2021 and 2023, VDARE paid more than $47,000 for what were, upon information and belief, Castle-related maintenance and improvements.

105. Lydia Brimelow, on behalf of BBB, rented two cottages in the Castle Complex to herself and her family as private residences. She signed the lease agreement as both landlord and tenant.

22

106. BCF also paid BBB $1,000 monthly as "rent" for the use of the Castle Complex. Upon information and belief, there was no lease or other agreement establishing the obligation and basis for these "rent" payments by BCF to BBB.

107. As a result of these and subsequent transactions, VDARE ran a net loss for years paying the Brimelow-run entities for the use and maintenance of a property that VDARE had previously owned outright.

108. Between 2021 and 2022, VDARE made at least 20 "loans" to BCF totaling $497,500. None were documented until July 2023, when Lydia Brimelow executed a backdated promissory note permitting BCF to borrow up to $500,000 from VDARE, effective January 1, 2021.

109. Likewise, VDARE paid tens of thousands of dollars to the Brimelow-controlled, for-profit BBB, denominated as "loans." From May 2021 through February 2023, VDARE "loaned" BBB $33,000. These loans were not documented until July 2023 when Lydia Brimelow executed a backdated "Revolving Promissory Note" allowing BBB to borrow up to $250,000 from VDARE. Then, from March 2024 through August 2024, VDARE paid BBB an additional $6,439.62. There is no evidence that these amounts were ever paid back to VDARE.

110. No security was provided for the "loans" to BCF and BBB, and no independent directors played any role in considering or those loans to ensure that their terms were fair, reasonable, in the best interests of VDARE, or aligned in any way with VDARE's charitable mission.

**VIII. The Brimelows give Lydia Brimelow authority to dispose of VDARE's remaining real property interests, and she conveys them to a company associated with her father.**

111. In February 2022, after "lending" hundreds of thousands of dollars to the Brimelow-controlled entities BCF and BBB, VDARE's board, acting only through Brimelows,

23

Case 26-52, 04/23/20, Dkt Entry: 161.3, Page 58 of 121

entered into a new agreement to borrow up to two million dollars from the corporation Mountain States Funding ("MSF"). Lydia Brimelow's father, Joseph Sullivan, acted as the point of contact for MSF along with former VDARE employee John Schlick.

112. Upon information and belief, Sullivan and Schlick created MSF in 2021 in furtherance of the Brimelow's scheme for a new "corporate structure" to control the Castle Complex and transfer funds out of VDARE's control.

113. Despite Lydia's father's role representing MSF, the counterparty in the transaction, the MSF loan was approved at a February 2022 board meeting attended only by Brimelows—Peter, Lydia, and John. No alternative lending options were discussed. No independent directors played any role in considering or approving the MSF loan to ensure its terms were fair and reasonable or in VDARE's best interest and there is no indication from the board minutes why the loan was even needed.

114. In July 2022, the VDARE board gave Lydia Brimelow discretion to collateralize all of VDARE's assets, including its Castle Complex mortgages, to securitize the loan from MSF. Despite Lydia's father's role representing MSF in this transaction, no independent directors participated in these discussions or approved the collateralization of the loan.

115. In transactions on November 28, 2022 and December 28, 2022, VDARE assigned all of its remaining property interest in the Castle Complex as collateral to MSF. Lydia Brimelow executed all assignments of the deeds of trust and other security instruments. Her father, Sullivan, was listed as MSF's point of contact on multiple loan documents.

116. Under the terms of these transfers, BCF and BBB were to make mortgage payments directly to MSF instead of to VDARE. According to the terms of the agreements, VDARE's

24

"collateral" would secure a loan of up to $2 million from MSF. But MSF only ever transferred $340,000 in loan money to VDARE—a fraction of the value of that collateral.

**IX.     Following regulatory scrutiny by OAG, the Brimelows accelerate funds transfers from VDARE to their network of out-of-state corporations.**

117.     Upon information and belief, in 2023 after learning of OAG's regulatory investigation, the Brimelows accelerated their efforts to strip VDARE of its assets. Following court losses to OAG, VDARE dramatically increased its "rent" payments to BCF.

118.     In March 2023, after the Appellate Division ordered VDARE to comply with OAG's investigative subpoena, VDARE increased its monthly "rent" payments to BCF from $6,000 to $10,000 per month.

119.     On June 30, 2023, Lydia Brimelow, gave MSF a deed of trust for BCF's share of the Castle Complex in the amount of $1.08 million. At the time of filing, VDARE continued to hold a deed of trust on MSF's Castle Complex assets.

120.     In July 2023, after VDARE lost a preliminary injunction motion in federal court, VDARE increased its monthly payments to BCF to $33,000.

121.     That same month, VDARE released BCF from the mortgage it held on BCF's share of the Castle Complex. At that time, BCF had only paid VDARE $126,926.46 of the $1.08 million on the note. The release in the deed of trust recited that BCF's had "been paid in full and satisfied."

122.     In fact, BCF never paid the full amount of the Castle Complex mortgage.

123.     These increased payments were not reflected in a new lease or any other written agreement between VDARE and BCF.  There is no evidence that either of these increases in rent payments was considered by VDARE's board, resulted from an arms-length negotiation, or were based on market conditions. Nor is there any evidence that releasing BCF from its $1.08 million

25

obligation to VDARE was considered by VDARE's board, resulted from an arms-length negotiation, or was in the best interest of VDARE.

124. VDARE's public disclosures with respect to BBB as an asset are inconsistent. Starting in August 2023, VDARE sought to sell BBB to MSF.

125. An undated appraisal from MSF valued BBB's real property at $675,000, and MSF offered to purchase BBB for $400,000. In 2023, both amounts were far more than half of the reasonably estimated assets of VDARE, even assuming that it owned BBB as an asset. Selling BBB would therefore trigger mandatory regulatory review by OAG or this Court (on notice to OAG) under N-PCL §§ 510,511, and 511-a.

126. VDARE failed to submit any application to OAG or a Court concerning the sale of BBB to MSF.

127. In a December 2023 letter to his daughter Lydia Brimelow, Sullivan lowered MSF's appraisal of BBB and acknowledged the danger of regulatory scrutiny under the N-PCL if VDARE sold more than half of its assets. To avoid such scrutiny, he "reassessed" BBB's value at between $470,624 and $538,652 and deducted loans owed to VDARE in the amount of $470,624, with a final value of $68,028.

128. In December 2023, MSF purchased VDARE's ownership interests in BBB for $68,000 and purchased the right to collect BBB's outstanding commercial debt to VDARE, which was in excess of $172,000, for an additional $100,000.

129. The end result was that MSF paid a total of $168,000 for real estate it had previously appraised at over $600,000—more than three times the purchase price.

130. Even while Joe Sullivan, Lydia's father, acted on behalf of MSF in connection with its transactions with VDARE, VDARE continued to pay him directly for consulting advice.

26

131. No independent director of VDARE played any role in considering or approving these transactions, and there is no evidence that the board considered whether they were fair, reasonable, and in the best interests of VDARE, or aligned with VDARE's charitable mission.

**X.    VDARE runs out of money and winds up operations.**

132. As it shed other assets, VDARE continued making cash payments to BCF denominated as a monthly "rent" payment at the rate $33,000 during the period July 2023 until February 2024.

133. On February 26, 2024, Joseph Sullivan, who had just orchestrated the purchase of BBB's real estate assets for a fraction of their value, informed Peter and Lydia Brimelow that there was a "high probability" that VDARE would run out of cash "as early as the end of April or as late as the end of June."

134. By VDARE's own calculations, BCF still owed VDARE $330,740.06 from a revolving promissory note Lydia Brimelow had executed and backdated in July 2023. But, despite sharing the same president—Lydia Brimelow—BCF did not transfer any cash to VDARE.

135. Instead, in April 2024, Lydia Brimelow executed a "modification" of the outstanding loan promissory note on behalf of VDARE and BCF. The modification extended the loan's maturity date from December 31, 2026 until December 31, 2029. During that time, VDARE would be permitted to continue "renting" the Castle Complex without cash payment. The "rent payments" due would be credited against BCF's total outstanding debt.

136. Upon information and belief, no inquiry or determination was made at any time by the non-Brimelow directors of VDARE's board as to whether those increases in rent payments or the change in VDARE's payment arrangement with BCF were fair, reasonable, and in the best interests of the organization.

27

137. In July 2024, VDARE announced publicly that it had run out of operating funds and would cease operations. It had approximately $150,000 on hand. Peter Brimelow resigned as CEO, VDARE discontinued its sole program activity of publishing a website and closed its website's archives.

138. To date, VDARE has not sought OAG or judicial approval to dissolve, as required by law.

## XI. BCF continues even after VDARE has ceased operations.

139. Peter Brimelow, in a blogpost concerning closing VDARE, admitted that BCF is a "separate foundation" that would continue beyond VDARE's demise.

140. He further noted that Berkeley Castle—which he and Lydia Brimelow control through BCF—would continue to host conferences as well as "events like weddings."

141. VDARE transferred its most valuable asset—the Berkeley Springs Castle—to BCF and later forgave BCF's never-fully-paid mortgage. In cash transactions between the two entities between 2021 and November 2024, BCF netted at least $740,000. According to Lydia Brimelow VDARE was a "critical revenue stream" for BCF and provided it with a "steady and reliable source of income."

28

Case 26-52, 04/23/2026, Dkentry: 36.1, Page63 of 121



*Fig. 3 An April 29, 2025 post from BCF's X account.*

142. BCF undertakes its own, independent purportedly charitable program activities unrelated to VDARE. It describes its mission as preserving the historical character of the Berkeley Springs Castle. It conducts historical tours of the Castle, holds community events, rents event space for weddings and special events, and regularly hosts its own special events. Past events have included Apple Butter Festival," an "Afternoon Tea," and a sold-out "Murder Mystery Dinner" that cost $175 a person, or $1,500 for a table of ten.

29

143. BCF maintains a website and active social media profile to promote its events and solicit donations supporting BCF's mission.

## XII. VDARE failed to maintain a statutorily satisfactory conflict of interest policy or ensure compliance with its conflicts of interest policy.

144. VDARE failed to maintain a conflict of interest policy meeting the statutory requirements provided NPC-L § 715-a. VDARE's conflict of interest policy failed to include, *inter alia*, the procedures for disclosing a possible conflict of interest, the procedures to determine whether a conflict of interest exists, or a prohibition that the person with the conflict of interest not be present at any deliberation or vote on a matter giving rise to such a conflict.

145. VDARE also failed to monitor or enforce compliance with its deficient conflict of interest policy as a matter of substance and as a matter of procedure.

146. At annual board meetings, the board purportedly reminded Directors to submit their annual disclosure forms. However, they submitted those forms inconsistently.

147. Upon information and belief, board members never disclosed conflicts which fell within the scope of the policy.

## XIII. VDARE failed to comply with regulatory reporting requirements.

### a. Failure to Make Required Annual Filings

148. As a New York not-for-profit corporation holding charitable assets and operating in New York, VDARE must register and file accurate and complete annual reports with the Charities Bureau. In addition to these registration requirements, charitable organizations soliciting contributions in New York must also register and file accurate and complete annual reports under Article 7-A of the Executive Law. These annual reports, commonly referred to as CHAR500s, must include copies of an organization's annual IRS Form 990, and, for organizations like VDARE, copies of the organization's audited financial statements.

30

149. CHAR500s must be signed by: (i) the organization's President or Authorized Officer and (ii) its Chief Financial Officer or Treasurer, both of whom, by their signatures, certify under penalties of perjury that the report, including all attachments, is true and accurate.

150. Despite this requirement, VDARE filed a facially deficient CHAR500 for fiscal year 2021 and thereafter failed to file CHAR500s for fiscal years 2022 and 2023.

**b. VDARE Continues to Solicit Donations Despite Failing to File Annual Reports**

151. In August of 2024 the Office of the Attorney General Charities Bureau notified VDARE by letter that its 2021 CHAR500 was deficient and that it was delinquent in its submission of its 2022 and 2023 CHAR500 filings. The letter further notified VDARE "that Article 7-A of the Executive Law prohibits a delinquent organization from raising funds in New York, including through government grants."

152. Despite this legal bar to further fundraising, and after purportedly ceasing operations, VDARE continues to solicit donations in New York and elsewhere.

153. For example, a July 14, 2025 video VDARE posted to its X account, includes a prominent link in the corner of the video reading "Make a Tax-Deductible Contribution: www.GiveSendGo.Com/VDARE" which is displayed for nearly the entirety of the video's six minutes.

31

Case 26-52, 04/23/2026, Dkt Entry: 36.1, Page 66 of 121



*Fig. 4 Lydia Brimelow solicits donations for VDARE in July 14, 2025 video*

154.    And as of the filing of this Complaint, VDARE's website still includes an active link soliciting donations, both by mail and through and online service "GiveSendGo."  VDARE's GiveSendGo page includes recent updates from Lydia Brimelow and continued requests for donations.

**c.    Certification of False or Misleading Annual Filings**

155.    Prior to ceasing to fulfill its statutory reporting obligations, VDARE's CHAR500s for fiscal years 2019, 2020, and 2021 were untimely and contained material omissions and misrepresentations.

156.    VDARE filed its 2019 CHAR500 with the Charities Bureau in March 2021, its 2020 CHAR 500 in January 2023, and its 2021 CHAR500 in August 2023.

157.    Across all three filings, VDARE failed to report its related party transactions on the attached IRS Form 990s with Joseph Sullivan and/or Joseph Sullivan Associates, despite paying him tens of thousands of dollars in fiscal years 2019, 2020, and 2021.

158.    VDARE also failed to accurately disclose directors and officers in the Form 990s included with VDARE's 2019, 2020, and 2021 CHAR500s.  For fiscal year 2019, VDARE failed

32

to disclose that Lydia Brimelow was a director and officer; for fiscal year 2020, VDARE failed to disclose Joseph Fallon and John Wall as directors; and for 2021, it failed to disclose Fallon again.

159.    The last CHAR 500 VDARE filed with OAG, for fiscal year 2021, was also incomplete and riddled with material misrepresentations.  Without explanation or justification, VDARE marked nearly every response on its 2021 CHAR500 with "N/A" rather than answering "yes" or "no" as required.  And despite disclosing that VDARE collected between $25,000 and $99,000 in donations from New York for fiscal year 2021, elsewhere in its CHAR500 it represented it did not solicit or receive "more than $25,000 annually in total contributions from New York State residents. . ."

160.    For fiscal year 2021, VDARE filed more than one version of its IRS Form 990. The version attached to its 2021 CHAR500 that was filed with OAG differed from the version it filed with the IRS in that there was a $154,045 discrepancy in the reconciliation of net assets between the two.

161.    Further, VDARE's 2021 IRS Form 990s contain material misrepresentations and omissions, including that: VDARE reported a loan from Peter and Lydia Brimelow of $105,000, and disclosed that the loan was made pursuant to a "written agreement," but, upon information and belief, no such written agreement exists; and VDARE failed to disclose the personal use of cottages owned by BBB as residences for Peter, Lydia, and Hannah Claire Brimelow.

## THE ATTORNEY GENERAL'S INVESTIGATION AND VDARE'S UNLAWFUL INTERFERENCE

162.    On June 24, 2022, OAG served a civil investigative subpoena on VDARE as part of an investigation into an apparent pattern of potential financial improprieties evidenced through public sources and reporting.

33

163. The subpoena demanded information concerning VDARE's organizational structure, compliance with conflict-of-interest policy and related party transaction requirements under New York law, financial operations, the purchase and conveyance of the Castle Complex, and transactions between VDARE and entities controlled by the Brimelows.

164. VDARE responded that the subpoena was "incredibly unlawful" and initially refused to produce any documents.

165. Instead of producing responsive material, VDARE instead challenged the subpoena's validity under the First Amendment before this Court, the Appellate Division for the First Department, the Court of Appeals, and the U.S. District Court for the Northern District of New York. Each court rejected its arguments. VDARE's appeal to the Second Circuit remains subjudice.

166. On January 23, 2023, after full briefing and argument, this Court determined that the subpoena was valid and reasonable, properly issued in the public interest and within the Attorney General's statutory authority to supervise and investigate New York charities. It rejected all of VDARE's First Amendment arguments.

167. This Court ordered VDARE to comply with the subpoena by February 24, 2023. On February 15, 2024, the First Department affirmed that Order.

168. VDARE's efforts to stay this Court's order pending appeal were rejected. VDARE nonetheless refused to comply with the order and refused to produce any material by the February 24, 2023 deadline.

169. Meanwhile, VDARE continued litigating in federal court, where its motion to enjoin this Court was denied as were multiple motions to stay pending appeal.

34

170. VDARE's continued noncompliance required the Attorney General to seek further intervention by this Court. On October 16, 2023, OAG moved for a contempt finding for VDARE's failure to meet its February 25, 2023 deadline. At oral argument on the motion, this Court gave VDARE "one last chance" to comply with the order. VDARE continued to defy the order, and, on March 27, 2024 this Court held VDARE in contempt for willfully failing to obey its orders directing VDARE to do so. It directed VDARE to purge its contempt by April 30, 2024.

171. VDARE continued to withhold documents, requiring the Attorney General to bring yet another contempt motion.

172. On October 17, 2024, more than six months after its first contempt order, this Court once again held VDARE in contempt of court, determining that VDARE "engaged in frivolous conduct in withholding the production of documents and responsive materials in their possession, repeatedly misrepresenting to the Court and to counsel their readiness to produce documents" and that VDARE's conduct "was undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another[.]" This Court issued a judgment fining VDARE $43,500.00, and also increased the continuing contempt fine to $1,000-per-diem.

173. On October 22, 2024, after nearly two years of litigation, VDARE finally supplemented its deficient production.

174. Although VDARE purports that it has now complied with its obligations, numerous deficiencies remain with its production that are currently in dispute before this Court. As recently as July 2025, one court official recognized that "VDARE has continued a practice of delay . . . throughout the entire proceeding.

175. Despite VDARE's attempts to delay and impede the Attorney General's investigation into its and the Brimelow's mismanagement, waste of assets, and unlawful

35

Case 26-54, 04/23/2026, DktEntry: 36.1, Page70 of 121

transactions, the ultimate subpoena responses reveal a pattern of illegality. Those responses, in conjunction with information obtained from third-party sources, establish the violations of law set forth in this complaint.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### For Breach of Fiduciary Duty Under N-PCL §§ 717 and 720 and Removal Under N- PCL §§ 706(d) and 714(c)
### (Against the Individual Defendants)

176. The Attorney General repeats and re-alleges the allegations set forth in paragraphs 1 through 175 above as though fully set forth herein.

177. The Individual Defendants breached their fiduciary duties of loyalty, care, and obedience to the VDARE Foundation by using their powers as officers and directors of VDARE to obtain illegal compensation and benefits; to convert VDARE funds for their own benefits; to induce VDARE to enter into unlawful related party transactions; to cause VDARE to file annual reports with the Attorney General containing materially false and misleading statements and omissions; to cause VDARE to issue illegal loans; to cause VDARE to fail to properly administer its conflicts of interest policy; and to dominate, control, and direct VDARE to obtain private benefits for themselves, their family members, and certain other insiders in contravention of VDARE's bylaws, policies and procedures, and applicable laws.

178. The Individual Defendant's breaches of fiduciary duty have damaged VDARE by, among other things, causing its assets to be diverted for non-VDARE purposes and be wasted and by causing VDARE to engage in related party transactions that lacked adequate consideration and were not reasonable or in the best interests of VDARE; by exposing VDARE to liability for causing it not to accurately report the monetary benefits the Individual Defendants received from VDARE as income and not to comply with corresponding tax payment obligations pursuant to Section 4958

36

of the Internal Revenue Code; and by jeopardizing VDARE's tax exempt status and authority to conduct business for failure to comply with regulatory reporting obligations.

179.    Accordingly, the Individual Defendants are liable under N-PCL § 720(a)(l) to account and pay restitution and/or damages, including returning the compensation they received while breaching their fiduciary duties to VDARE, plus interest at the statutory rate of 9%, and rescission of any agreements providing for compensation following their employment, for their conduct in the neglect and violation of their duties in the management and disposition of VDARE's charitable assets and in causing loss and waste of those assets by their breaches of fiduciary duty.

180.    To the extent they have not already resigned, the Individual Defendants should be removed for cause under N-PCL §§ 706 and 714 and be barred from re-election of reappointment as a director or officer of the VDARE Foundation and from serving as an officer, director or in any other fiduciary role in a not-for-profit or charitable organization incorporated or authorized to conduct business in the State of New York.

**SECOND CAUSE OF ACTION**
**For Breach of EPTL § 8-1.4**
**(Against the Individual Defendants)**

181.    The Attorney General repeats and re-alleges the allegations set forth in paragraphs 1 through 180 above as though fully set forth herein.

182.    Section 8-1.4(m) of the EPTL authorizes the Attorney General to institute appropriate proceedings to secure the proper administration of any not-for-profit corporation organized under the laws of this State for charitable purposes.

183.    At all relevant times, the Individual Defendants were directors and officers of VDARE, dominated and controlled VDARE's Board, and had access to and control of VDARE's charitable assets. In that capacity, the Individual Defendants were trustees pursuant to EPTL § 8-1.4 because they held and administered property for charitable purposes.

37

184.    As set forth in the preceding paragraphs, the Individual Defendants failed to properly administer the charitable assets of VDARE Foundation entrusted to their care by using their powers as officers and directors of VDARE to obtain illegal compensation and benefits; to convert VDARE funds for their own benefits; to induce VDARE to enter into illegal related party transactions; to cause VDARE to file annual reports with the Attorney General containing materially false and misleading statements and omissions; to cause VDARE to issue illegal loans; to cause VDARE to fail to properly administer its conflicts of interest policy; and to dominate, control, and direct VDARE to obtain private benefits for themselves, their family members, and certain other insiders in contravention of VDARE's bylaws, policies and procedures, and applicable laws.

185.    As a result, the Individual Defendants should be ordered to account for their breaches and to make restitution and/or pay damages, plus interest at the statutory rate of 9%, to VDARE. In addition, the Individual Defendants should be permanently barred from serving as officers, directors, trustees or in any other fiduciary roles of any not-for-profit or charitable organization incorporated or authorized to conduct business in the State of New York.

**THIRD CAUSE OF ACTION**
**Wrongful Related-Party Transactions**
**N-PCL §§ 112(a)(10), 715(f) and EPTL § 8-1.9(c)(4)**
**(Against the Individual Defendants)**

186.    The Attorney General repeats and re-alleges the allegations set forth in paragraphs 1 through 185 above as though fully set forth herein.

187.    Under N-PCL § 715 and EPTL § 8-1.9, VDARE is prohibited from entering into any related party transaction unless the transaction is determined and documented by the majority of the disinterested members of the Board or an authorized committee of the Board to be fair,

38

reasonable, and in the corporation's best interest at the time of the determination in compliance with that section.

188. The Individual Defendants caused VDARE to enter into unlawful related party transactions, including payments to Happy Penguins; the transfer or sale of the Castle Complex to BCF and BBB—corporations in which Peter and/or Lydia Brimelow were directors and/or officers; the loan and lease agreements between VDARE and BCF and/or BBB; VDARE's transactions related to MSF effecting the transfer of VDARE assets for a loan from MSF without adequate consideration; housing the Individual Defendants and their children at the Castle Complex; and payments to Lydia Brimelow's father, Joseph Sullivan.

189. Despite the Individual Defendants or other related parties having a financial interest in these transactions, the Individual Defendants failed to disclose in good faith to the VDARE's disinterested directors, or an authorized committee thereof, the material facts concerning those interests.

190. The Individual Defendants participated in the voting and deliberations concerning related party transactions in which they had an interest.

191.  The Individual Defendants dominated VDARE's board, which failed to consider alternative transactions; contemporaneously document in writing the basis for approving the transactions; or determine that the transactions were fair, reasonable, and in the best interests of VDARE at the time of transactions.

192. The Individual Defendant's conduct was willful and intentional with respect to these transactions.

193. By the foregoing acts and omissions, the Individual Defendants are liable under N-PCL § 715(f) and EPTL § 8-1.9(c), to account for profits from related party transactions not already

Case 26-52, 04/23/2026, Dkifry 361, Page74 of 121

accounted for; to the extent not already paid, pay VDARE the value of charitable assets used in such transactions; to return assets lost to VDARE as a result of the transactions, to the extent not already returned; to pay VDARE an amount up to double the value of the amount of each benefit improperly bestowed by each transaction occurring and should be enjoined from serving as officers, directors or trustees, or in any similar capacity, of any not-for-profit charitable organization incorporated or authorized to conduct business or solicit charitable donations in the State of New York.

## FOURTH CAUSE OF ACTION
### For Loans in Violation of N-PCL § 716
### (Against the Individual Defendants)

194. The Attorney General repeats and re-alleges the allegations set forth in paragraphs 1 through 193 above as though fully set forth herein.

195. N-PCL § 716 provides that no loans shall be made by a not-for-profit corporation to any entity in which one or more of its directors, officers or key persons are directors, officers or key persons or in which they hold a substantial financial interest. Any director or officer who participates in such a loan violates his or her duty to the corporation.

196. In their capacities as directors and officers of VDARE, Lydia Brimelow and Peter Brimelow authorized and caused to be effected loans from VDARE to organizations in which they were directors, officers, or key persons, thereby breaching their duties to VDARE.

197. Accordingly, the Individual Defendants are liable for violating N-PCL § 716 and should be required to pay restitution and/or damages, including returning the compensation they received while breaching their fiduciary duties to VDARE, plus interest at the statutory rate of 9%, and rescission of any agreements providing for compensation following their employment, for their conduct in the neglect and violation of their duties to VDARE.

40

198. To the extent they have not already resigned, the Individual Defendants should be removed for cause under N-PCL §§ 706 and 714 and be barred from re-election of reappointment as a director or officer of the VDARE Foundation and from serving as an officer, director or in any other fiduciary role in a not-for-profit or charitable organization incorporated or authorized to conduct business in the State of New York.

## FIFTH CAUSE OF ACTION
### Wrongful Related-Party Transactions – N-PCL §§ 112(a)(10), 715(f) and EPTL § 8-1.9(c)(4)
### (Against Defendant VDARE)

199. The Attorney General repeats and re-alleges the allegations set forth in paragraphs 1 through 198 above as though fully set forth herein.

200. VDARE entered into numerous unlawful related party transactions in violation of N-PCL § 715 and EPTL § 8-1.9. These transactions include payments to a company owned by VDARE directors and officers Peter and Lydia Brimelow, Happy Penguins; the transfer or sale of the Castle Complex to BCF and BBB—corporations in which Peter and/or Lydia Brimelow were directors and/or officers; the loan and lease agreements between VDARE and BCF and/or BBB; VDARE's transactions related to MSF effecting the transfer of VDARE assets for a loan from MSF without adequate consideration; housing Peter and Lydia Brimelow and their children at the Castle Complex; and payments to Lydia Brimelow's father, Joseph Sullivan.

201. VDARE's board, or an authorized committee thereof, failed to consider alternative transactions; contemporaneously document in writing the basis for approving the transactions; or determine that the transactions were fair, reasonable, and in the best interests of VDARE at the time of transactions.

41

202. The Court should enjoin, void or rescind the unlawful related party transactions, and award damages and such other appropriate remedies, in law or equity to ensure compliance with the requirements of the law.

### SIXTH CAUSE OF ACTION
### For Breach of EPTL § 8-1.4
### (Against Defendant VDARE)

203. The Attorney General repeats and re-alleges the allegations set forth in paragraphs 1 through 202 above as though fully set forth herein.

204. Section 8-1.4(m) of the EPTL authorizes the Attorney General to institute appropriate proceedings to secure the proper administration of any not-for-profit corporation organized under the laws of this State for charitable purposes.

205. VDARE, a charitable not-for-profit corporation in New York, which solicits, receives, and administers charitable assets, was at all times a trustee pursuant to EPTL § 8-1.4(a)(2).

206. As detailed in preceding paragraphs, VDARE, which was governed by the Individual Defendants, who asserted control over its charitable assets, failed to secure the proper administration of the charitable assets in VDARE's possession and control. The Attorney General seeks declaratory relief holding VDARE liable for failing to secure the proper administration of the charitable assets in VDARE's possession and/or control in accordance with EPTL § 8-1.4, and appropriate injunctive or other equitable relief, including, without limitation, the dissolution of VDARE and distribution of its remaining charitable assets in accordance with New York law.

42

## SEVENTH CAUSE OF ACTION
### Illegal Solicitation of Donations Under Executive Law §§ 172, 172-b, 172-d(10) and 175(2)(d) and N-PCL §§ 112 and 115
### (Against All Defendants)

207.     The Attorney General repeats and re-alleges the allegations set forth in paragraphs 1 through 206 above as though fully set forth herein.

208.     VDARE failed to submit annual reports required by Article 7-A of the Executive Law for fiscal years 2022 and 2023, and was accordingly legally prohibited from soliciting donations.

209.     Nonetheless, VDARE and Peter and Lydia Brimelow have continued to solicit donations in New York and elsewhere.

210.     As a result VDARE and Peter and Lydia Brimelow violated Sections 172, 172-b, 172-d(10) of the Executive Law and Section 115 of the N-PCL, and pursuant to Section 175(2)(d) of the Executive Law should be enjoined from soliciting or collecting funds on behalf of any charitable organization operating in this State and Peter and Lydia Brimelow should be enjoined from serving as an officer, director or trustee of any not-for-profit or charitable organization incorporated or authorized to conduct business in the State of New York.

## EIGHTH CAUSE OF ACTION
### For False or Deficient Filings Under Executive Law §§ 172, 172-b 172-d(1) and 175(2)(d)
### (Against All Defendants)

211.      The Attorney General repeats and re-alleges the allegations set forth in paragraphs 1 through 210 above as though fully set forth herein.

212.     VDARE made materially false and misleading statements and omissions in the annual reports the organization filed with the Attorney General. Defendants Peter Brimelow and

43

Case 26-52, 04/23/2026, Library: 361, Page 78 of 121

Lydia Brimelow signed and certified such reports notwithstanding the number of falsehoods therein, of which each of them was or should have been aware.

213. VDARE failed to file annual reports with the Attorney General as required by law for fiscal years 2022 and 2023.

214. As a result, VDARE and Peter and Lydia Brimelow violated Sections 172, 172-b, 172-d(1) of the Executive Law and, pursuant to Section 175(2)(d) of the Executive Law should be enjoined from soliciting or collecting funds on behalf of any charitable organization operating in this State and Peter and Lydia Brimelow should be enjoined from serving as an officer, director or trustee of any not-for-profit or charitable organization incorporated or authorized to conduct business in the State of New York.

**NINTH CAUSE OF ACTION**
**Failure to Obtain Court of OAG Approval for the Sale of BBB as Required by N-PCL §§ 510, 511, 511-a**
**(Against All Defendants)**

215. The Attorney General repeats and re-alleges paragraphs 1 through 214, as though fully set forth herein.

216. At the time VDARE sold BBB to MSF for below market value, BBB represented all or substantially all of VDARE's remaining assets.

217. Prior to that sale, VDARE, as a New York not-for-profit corporation organized for charitable purposes, was required to obtain the approval of OAG or this Court, with notice to OAG. VDARE did not seek or obtain such approval.

218. As a result, a judgment should be issued declaring that the sale of BBB to MSF is *void ab initio* and an illegal act.

44

## TENTH CAUSE OF ACTION
### Dissolution of VDARE – N-PCL §§ 112(a)(1), 112(a)(5), 520, 1101(a)(2)
**(Against Defendant VDARE Foundation, Inc.)**

219. The Attorney General repeats and re-alleges the allegations set forth in paragraphs 1 through 218 above as though fully set forth herein.

220. Under N-PCL § 1101(a)(2), the Attorney General may bring an action seeking the dissolution of a charitable corporation when "the corporation has exceeded the authority conferred upon it by law, or … has carried on, conducted or transacted its business in a persistently fraudulent or illegal manner, or by the abuse of its powers contrary to public policy of the state has become liable to be dissolved."

221. VDARE has operated in a persistently illegal manner by, among other things, permitting its assets over the course of many years to be used for the personal benefit of its officers and directors, their family members and other insiders; providing excessive compensation and benefits to the Individual Defendants; failing to adopt and enforce a conflicts of interest policy that met the statutory requirements; issuing illegal loans to entities in which Lydia Brimelow and/or Peter Brimelow severed as officers and/or directors; entering into illegal related party transactions; failing to file annual reports with the Charities Bureau as required by law; filing annual reports with the Charities Bureau containing material misstatements or omissions; and illegally soliciting donations.

222. As detailed in preceding paragraphs, VDARE and its individual trustees, as that term is used in the EPTL, failed to secure the proper administration of the charitable assets in their possession and control, and violated the duties of prudence in the management of institutional funds.

223. As a result of the foregoing, VDARE has acted beyond its capacity by persistently disregarding the limitations in its certificate of incorporation and the law, and it has conducted its

45

business in a persistently illegal manner and abused its powers contrary to the public policy of the State of New York by operating without effective oversight or control by its officers and directors.

224.    Accordingly, this Court should dissolve the VDARE Foundation pursuant to N-PCL § 1109(b)(1) and distribute its remaining and future assets to be applied to charitable uses consistent with the mission set forth in the VDARE's certificate of incorporation, pursuant to N-PCL §§ 1115(a) and 1008(a)(15).

**ELEVENTH CAUSE OF ACTION**
**Dissolution of VDARE– N-PCL §§ 112(a)(7), 1102(a)(2)(D)**
**(Against Defendant VDARE)**

225.    The Attorney General repeats and re-alleges the allegations in paragraphs 1 through 224 above as though fully set forth herein.

226.    Under N-PCL § 112(a)(7), the Attorney General is authorized to maintain an action or special proceeding to enforce rights granted by statute to a director or officer of a charitable corporation.

227.    Pursuant to N-PCL § 1102(a)(2)(D), directors or members, as authorized, may petition the court for judicial dissolution where the "directors or members in control of the corporation have looted or wasted the corporate assets, have perpetuated the corporation solely for their personal benefit, or have otherwise acted in an illegal, oppressive or fraudulent manner."

228.    The Individual Defendants, as directors in control of VDARE, have looted or wasted the corporate assets, have perpetuated the corporation solely for their personal benefit, or have otherwise acted in an illegal, oppressive or fraudulent manner, by, *inter alia*; providing excessive compensation and benefits to themselves; failing to adopt and enforce a conflicts of interest policy that met the statutory requirements; issuing illegal loans to entities in which the Individual Defendants severed as officers and/or directors; and transferring VDARE's most

46

valuable asset, the Berkeley Castle Complex, to entities controlled by the Individual Defendants or their family through a series of illegal transactions and thereby allowing the use of VDARE's assets for the personal benefit of themselves and their family.

229. Accordingly, this Court should dissolve VDARE pursuant to N-PCL § 1109(b)(1) and Order that its remaining and future assets should be applied to charitable uses consistent with the mission set forth in the VDARE's certificate of incorporation, pursuant to N-PCL §§ 1115(a) and 1008(a)(15).

## **PRAYER FOR RELIEF**

WHEREFORE, the Attorney General requests judgment against the Defendants and an order be issued awarding the following relief:

A. Permanently barring Peter Brimelow from re-election or appointment as an officer or director of VDARE pursuant to N-PCL §§ 706(d), 714(c), and 717, EPTL §8-1.4, and Executive Law § 175(2)(d);

B. Removing Lydia Brimelow for cause from her position as President of VDARE, and permanently barring her re-election or appointment as an officer or director pursuant to N-PCL §§ 706(d), 714(c), and 717, EPTL § 8-1.4, and Executive Law § 175(2)(d);

C. Permanently barring Peter Brimelow and Lydia Brimelow from serving as officers, directors, or trustees of any not-for-profit or charitable organization incorporated or authorized to conduct business or solicit charitable donations in the State of New York pursuant to EPTL §8-1.4 and Executive Law § 175(2)(d);

D. Directing Peter Brimelow and Lydia Brimelow to account for their conduct in failing to perform their duties in managing VDARE's charitable assets; to pay full restitution to VDARE for the waste and misuse of its charitable assets, including the return of compensation

47

Case 26-54, 04/23/2026, Dkentry: 361.3, Page 82 of 121

received while breaching their fiduciary duties to the VDARE, plus interest at the statutory rate; and to pay damages to VDARE arising from the breach of fiduciary duties pursuant to N-PCL §§ 720 and EPTL §8-1.4;

E.      Declaring the sale of BBB to MSF *void ab initio* pursuant to N-PCL §§ 510, 511, and 511-a.

F.      Enjoining, voiding or rescinding the related party transactions entered into or proposed by Defendants; directing Peter Brimelow and Lydia Brimelow to account for profits made from and the value of charitable assets used in those transactions, to the extent not already paid; and due to their willful and intentional conduct as alleged, directing Peter Brimelow and Lydia Brimelow to pay VDARE an amount up to double the value of each benefit improperly bestowed by such transactions occurring after 2020 pursuant to pursuant to N-PCL §§ 112(a)(10), 715(f) and EPTL § 8-1.9(c)(4);

G.      Enjoining VDARE, Peter Brimelow, and Lydia Brimelow from soliciting or collecting funds on behalf of VDARE or any other charitable organization operating in this State pursuant to Executive Law § 175(2)(d);

H.      Declaring that VDARE failed to properly administer its charitable assets;

I.      Declaring that VDARE has exceeded the authority conferred upon it by law, has carried on, conducted, or transacted its business in a persistently fraudulent or illegal manner, or has abused its powers contrary to the public policy of the State of New York, and determining, in the court's discretion, that it is in the interest of the public to dissolve VDARE pursuant to N-PCL §§ 112(a)(1), 112(a)(5), 1101(a)(2), 1109, and CPLR 3001;

J.      Declaring that directors in control of VDARE have looted or wasted VDARE's charitable assets, have perpetuated the corporation solely for their personal benefit, or have

48

Case 26-54, 04/23/2026, DktEntry: 36.1, Page 83 of 121

otherwise acted in an illegal, oppressive or fraudulent manner, and determining, in the court's discretion, to dissolve VDARE pursuant to N-PCL §§ 112(a)(7), 1102(a)(2)(D), 1109 and CPLR 3001;

      K.     Dissolving VDARE and directing that its remaining assets and any future assets be applied to charitable uses consistent with dissolution clause of VDARE's certificate of incorporation pursuant to N-PCL §§ 112(a)(1), 112(a)(5), 112(a)(7), 1101(a)(2), 1102(a)(2)(D) and 1109.

      L.     Granting such other and further relief as the Court deems just and proper, including injunctive, monetary and declaratory relief as may be required in the interests of justice.

Dated:   New York, New York
          September 3, 2025

                            LETITIA JAMES
                            Attorney General of the
                            State of New York

By:         */s/ James Sheehan*

              JAMES SHEEHAN
              Charities Bureau Chief
              James.Sheehan@ag.ny.gov
              28 Liberty Street
              New York, New York 10005
              Tel. (212) 416-8401

MEGHAN FAUX, *Chief Deputy Attorney General for Social Justice*
EMILY STERN, *Section Chief, Charities Bureau*
RICHARD SAWYER, *Section Chief, Civil Rights Bureau*
RACHEL FINN, *Assistant Attorney General*
BENJAMIN D. LIEBOWITZ, *Assistant Attorney General*
*Of Counsel*

Case 26-52, 04/23/2026, Document 361, Page84 of 121

## VERIFICATION

JAMES SHEEHAN affirms this 3rd day of September 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law:

I am an Assistant Attorney General and the Chief of the Charities Bureau in the office of Letitia James, Attorney General of the State of New York (the "Attorney General"). I am duly authorized to make this verification.

I have read the foregoing complaint and am acquainted with the facts alleged therein based on the Attorney General's investigation of the transactions upon which the complaint is based, the annual filings and other reports made by the VDARE Foundation, Inc. with the Charities Bureau of the Attorney General's office, and the investigative materials contained in the files of the Attorney General's office. To my knowledge based on such acquaintance with the facts, the complaint is true, except as to those allegations made upon information and belief, and as to those allegations, I believe them to be true.

The reason this verification is not made by plaintiff is that plaintiff is a body politic and the Attorney General is its duly authorized representative.

_/s/ James Sheehan_
**James Sheehan**
**Charities Bureau Chief**

50

# EXHIBIT B

Case 1:25-cv-02305, Document 96-1, Page 86 of 121

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

| | | |
|---|---|---|
| **PRESENT:** | **HON. SABRINA KRAUS** | **PART** 57M |
| | *Justice* | |

-------------------------------------------------------------------------------X

PEOPLE OF THE STATE OF NEW YORK, by LETITIA
JAMES, ATTORNEY GENERAL OF THE STATE OF NEW
YORK,

|  |  |
|---|---|
| **INDEX NO.** | 452397/2025 |
| **MOTION DATE** | 12/18/2025 |
| **MOTION SEQ. NO.** | 001 |

Plaintiff,

- v -

VDARE FOUNDATION, INC., PETER BRIMELOW, and
LYDIA BRIMELOW

**DECISION + ORDER ON
MOTION**

Defendants.

-------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 1, 16, 17, 18, 21, 24
were read on this motion to/for _____DISMISSAL_____.

## BACKGROUND

The Office of the Attorney General ("OAG") commenced this action against VDARE

Foundation, Inc. ("VDARE"), Peter Brimelow and Lydia Brimelow (collectively, "Defendants")

seeking, *inter alia*, a permanent injunction, restitution, and judicial dissolution of VDARE for

Defendants' alleged violations of the Not-for-Profit Corporations Law ("N-PCL"); Estates,

Powers and Trusts Law ("EPTL"); and Executive Law.

## ALLEGED FACTS

The OAG alleges the following information in its Complaint (NYSCEF Doc No. 1).

VDARE was incorporated in the State of New York under the Not-for-Profit

Corporations Law in December 1999. Peter Brimelow was a founder of VDARE and a longtime

leader of the organization in his roles as director, board chairman, Chief Executive Officer, and

President until July 2024. Peter led VDARE alongside with his wife, Lydia Brimelow, who was

452397/2025  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY          Page 1 of 16
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No.  001

1 of 16

Case 1:25-cv-04232-DLC Document 96-1 Filed 07 of 121

also a director and officer for VDARE. The two maintain an office at 304 Stucco Drive, Berkeley Springs, WV 25411.

VDARE's board of directors has consisted entirely of relatives of Peter Brimelow or his close friends. Lydia Brimelow described the organization as a "mom-and-pop" operation due to the composition of the board. VDARE's board meetings, if they happened at all, were run by Peter and Lydia Brimelow, and non-Brimelow board members were not provided with important financial information unless they requested it. The Complaint argues that this lax oversight on the board allowed Peter Brimelow's compensation to balloon, which became VDARE's largest noncapital expense from 2019 to 2022. For example, VDARE's IRS Form 990 for fiscal year 2023 stated that it paid Peter $25,000.00 but records later showed that it transferred around $280,000.00 to him that year.

Around January 2019, Lydia Brimelow explored purchasing a property in Berkeley Springs, West Virginia (the "Castle") built in the style of a medieval castle replete with a cylindrical tower on the corner of the building and a garrison-style walkway on top. Lydia called a special meeting of the board to discuss the purchase of the Castle on January 17, 2020, of which VDARE has not produced minutes. VDARE purchased the Castle for $1.4 million and closed on the property on or around February 14, 2020, and the Brimelows moved into the Castle or a cottage on the Castle grounds on September 18, 2020. The Brimelows later moved into the Castle as a residency, but their becoming residents at the Castle was neither reviewed nor approved by the board.

On July 21, 2020, Lydia Brimelow incorporated BBB, LLC ("BBB") as a single-member, for-profit corporation in the State of West Virginia. The address for BBB's principal place of business was listed as the Castle's. Lydia Brimelow has been BBB's sole manager and employee

452397/2025 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL Motion No. 001

Page 2 of 16

2 of 16

since its incorporation. Around the same time, Brimelow incorporated the Berkeley Springs Castle Foundation ("BCF"), a not-for-profit corporation in the State of West Virginia with its principal place of business also listed as the Castle's address. The majority of BCF's board has similarly been comprised of Brimelow family members.

On December 29, 2020, VDARE conveyed several parcels on the Castle grounds to BCF, including the Castle itself, but BCF made no down payment to VDARE prior to these conveyances. On the same day, VDARE conveyed the remaining parcels of the Castle grounds to BBB. The only consideration that BBB provided to VDARE was a promissory note and a deed of trust for $310,000.00.

After receiving the deed to the Castle, BCF leased the building back to VDARE and charged VDARE rent. Starting in February 2021, BCF made monthly payments of $4,700.09 to VDARE that it purported were mortgage payments while VDARE simultaneously made monthly payments to BCF of $6,000.00 that it purported were rental payments. Under the lease, VDARE remained responsible for all expenses and taxes on the Castle.

From May 2021 through February 2023, VDARE also transferred around $250,000.00 to BBB in what was purported to be loans. There is no evidence that the amounts were ever paid back to VDARE, nor is there any evidence that BBB provided VDARE with any security for the loans. After purportedly lending BBB the money, VDARE entered into an agreement to borrow up to $2 million from the corporation Mountain States Funding ("MSF"), and Lydia Brimelow's father, Joseph Sullivan, worked for MSF and was VDARE's point-of-contact for the transaction.

At some point, MSF offered VDARE $400,000.00 to purchase VDARE's ownership interests in BBB; however, VDARE sold MSF such interests for only $68,000.00 and also sold

452397/2025   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY          Page 3 of 16
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No.  001

3 of 16

VDARE's right to collect BBB's outstanding commercial debt for $100,000.00. VDARE's board was not consulted prior to the sale nor did the Attorney General or a court authorize the sale.

Following regulatory scrutiny by the OAG, VDARE increased monthly rental payments to BCF from $6,000.00 to $10,000.00 in March 2023, and from $10,000.00 to $30,000.00 in July 2023. That July, VDARE also released BCF from the mortgage it held on BCF's share of the Castle. At that time, BCF only paid VDARE $126,926.46 on the $1.08 million on the note. There was no evidence that VDARE's releasing BCF of its obligations under the mortgage was considered by VDARE's board.

In July 2024, VDARE publicly announced that it had run out of operating funds and would cease operations. It had approximately $150,000.00 cash on hand. VDARE discontinued publishing on its website and closed the site's archives. BCF, however, continued to operate after VDARE ceased operations, providing historical tours of the Castle, murder mystery dinners, and rental space for special events.

VDARE failed to register and file accurate charitable reports under Article 7-A of the Executive Law for fiscal years 2021, 2022 and 2023. In August 2024, Office of the Attorney General Charities Bureau notified VDARE by letter that its 2021 CHAR500 submission was deficient. However, VDARE was still soliciting donations on its website by July 2024.

## PENDING MOTION

On February 27, 2026, VDARE moved pursuant to CPLR § 3211(a)(7) for an order dismissing OAG's fifth cause of action for wrongful related-party transactions; sixth cause of action for breach of EPTL § 8-1.4; seventh cause of action for illegal solicitation of donations in violation of the Executive Law; eighth cause of action for false or deficient filings in violation of the Executive Law; ninth cause of action for failure to obtain OAG approval for the sale of BBB

452397/2025 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY Page 4 of 16
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No. 001

4 of 16

Case 1:25-cv-04232-DLC Document 93-1 Page 90 of 121

in violation of the N-PCL; and tenth and eleventh causes of action for dissolution of VDARE

pursuant to the N-PCL (NYSCEF Doc No. 16 [mot. seq. 001]). The motion was fully briefed and

marked submitted on February 27, 2026.

The motion is denied in its entirety for the reasons set forth below.

## DISCUSSION

A court will dismiss a cause of action when the movant demonstrates that "the pleading

fails to state a cause of action" (CPLR § 3211(a)(7)). Courts "give the complaint a liberal

construction, accept the allegations as true and provide [the nonmovant] with the benefit of every

favorable inference" (*Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit &

Capital, Inc.*, 30 NY3d 572, 582 [2017]). A court does not weigh "[w]hether a plaintiff can

ultimately establish its allegations" as part of the calculus in determining a motion to dismiss

(*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]). The court "merely examines the

adequacy of the pleadings," unlike a motion for summary judgment in which the court "searches

the record and assesses the sufficiency of the parties' evidence" (*Davis v Boeheim*, 24 NY3d 262,

268 [2014]).

### *The Court Denies VDARE's Motion to Dismiss the Tenth and Eleventh Causes of Action*

VDARE first argues that the Court should dismiss OAG's tenth and eleventh causes of

action because the Complaint fails to allege any self-dealing regarding the Castle transactions.

N-PCL § 112(a) provides:

The attorney-general may maintain an action or special proceeding:

> (1) To annul the corporate existence or dissolve a corporation that has acted
> beyond its capacity or power or to restrain it from carrying on unauthorized
> activities;

* * *

452397/2025  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY                    Page 5 of 16
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No.  001

5 of 16

(7) To enforce any right given under this chapter to members, a director or an officer of a charitable corporation. The attorney-general shall have the same status as such members, director or officer.

N-PCL § 1101(a) provides:

The attorney-general may bring an action for the dissolution of a corporation upon one of more of the following grounds:

* * *

(2) That the corporation has exceeded the authority conferred upon it by law, or has violated any provision of law whereby it has forfeited its charter, or carried on, conducted or transacted its business in a persistently fraudulent or illegal manner, or by the abuse of its powers contrary to public policy of the state has become liable to be dissolved.

Finally, N-PCL § 1102(a)(2)(D) provides:

(a) A petition for the judicial dissolution of a corporation may be presented:

* * *

(2) By ten percent of the total number of members or by any director, in the following cases:

* * *

(D) The directors or members in control of the corporation have looted or wasted the corporate assets, have perpetuated the corporation solely for their personal benefit, or have otherwise acted in an illegal, oppressive or fraudulent manner.

(b) In any proceeding for judicial dissolution the attorney-general shall be **a** necessary party.

Judicial dissolution of a corporation is an extraordinary remedy representing "the extreme rigor of the law" (*California v American Stores Co.*, 495 US 271, 289 [1990], quoting *People v North Riv. Sugar Ref. Co.*, 121 NY 582, 608 [1890]). When considering whether the judicial dissolution is an appropriate remedy in an action brought by the Attorney General, "the interest of the public is of paramount importance" (N-PCL § 1109(b)(1)). To warrant the drastic remedy of dissolution, the corporation must have engaged in "material misconduct" that "has produced,

452397/2025 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL Motion No. 001

Page 6 of 16

6 of 16

or tends to produce, injury to the public" (*North Riv. Sugar Ref. Co.*, 121 NY 582, 608, 608–09 [1890]).

An examination of the prior case law on judicial dissolution is necessary as courts "have a considerable amount of discretion in determining whether dissolution is warranted" (*People v Oliver Sch.*, 206 AD2d 143, 147–48 [4th Dept 1994]; *see also People v National Rifle Assn. of Am., Inc.*, 74 Misc 3d 998, 1020–22 [Sup Ct, NY County 2022] [*examining judicial dissolution precedents as it relates to various corporations*]). In *People v Abbott Maintenance Corp.*, the First Department held that the Attorney General had made a *prima facie* case for dissolution of Abbott Maintenance Corporation, reversing the decision of the trial court (11 AD2d 136, 139 [1st Dept 1960]). The corporation there was accused of deceptively advertising open job positions for floor waxing and then subsequently inducing applicants to enter into contracts for the installment purchase of a floor waxer that was over nine times the cost of the waxer's market rate (*id.* at 139). The First Department reasoned that such conduct became of the public concern because it "transcend[ed] private controversy between the individual members of the public shown to be misled and the Abbott corporation" (*id.*).

In *People v Oliver School*, the Fourth Department held that the Attorney General brought a valid action for corporate dissolution under the Business Corporation Law, affirming the decision of the lower court (206 AD2d 143, 145 [4th Dept 1994]). The defendant-school in that case was using refund money that rightfully belonged to its former students to remediate its own issues with cash flow (*id.* at 148). The Fourth Department reasoned that a jury could find that the conduct constituted a "grave, substantial and continuing abuse, involving a public rather than a private right," by the school (*id.* at 147–48).

452397/2025 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No. 001

Page 7 of 16

7 of 16

Case 1:25-cv-04233-DLC Document 96-1 Filed 05/20/26 Page 93 of 121

Dissolution may also be appropriate when the corporation exists as a "sham charity" or an entity meant to carry out criminal activity (*see* 134 AD3d 1081, 1081 [2d Dept 2015]). In *People v Coalition Against Breast Cancer, Inc.*, the Second Department affirmed the judgment of the trial court ordering dissolution of the corporation (134 AD3d 1081, 1081 [2d Dept 2015]). The defendant had been soliciting donations on behalf of a different charity that purported to help women detect early signs of breast cancer and to fund research, but neither the defendant nor the other charity was involved in any breast cancer research (*id.* at 1082). Similarly, in *People v Zymurgy, Inc.*, the First Department held that dissolution was an appropriate remedy for a corporation that admitted that it never held board meetings, likely served as a front for another entity, and likely engaged in criminal conduct (233 AD2d 178, 178 [1st Dept 1996]).

Conversely, the New York County Supreme Court (Cohen, J.S.C.) dismissed the remedy of dissolution pursuant to CPLR § 3211(a)(7) in *People v National Rifle Association of America* (74 Misc. 3d 998, 1024 [Sup Ct, NY County 2022]). The Attorney General there alleged that the officers of the National Rifle Association ("NRA") used the corporate funds for their own personal benefit, such as for repeated travel on a private jet and a vacation on a yacht, and that the corporation's filings with the New York Charities Bureau contained materially false statements (*id.* at 1006–07, 1009–10). The Supreme Court reasoned that the alleged mismanagement of the NRA was "troubling" but not that the conduct "has produced, or tends to produce, injury to the public" as the main victim of the alleged conduct "has been . . . the NRA and its members" (*id.* at 1023).

The allegations in the OAG's Complaint include, *inter alia*, the following:

(1) A majority of voting members on VDARE's board consisted of relatives of Peter Brimelow or his close personal friends, making the corporation a veritable "mom-and-pop" shop as stated by Lydia Brimelow (NYSCEF Doc No. 1 ¶¶ 46, 49).

452397/2025   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY                                            Page 8 of 16
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No. 001

8 of 16

Case 26-52, 04/23/2026, Dkt.my: 96.1, Page 94 of 121

(2) Directors other than the Brimelows were never provided with important financial information but such was made "available upon request" (*id.* ¶ 51).

(3) Peter Brimelow's compensation was reportedly VDARE's largest noncapital expense (*id.* ¶ 54).

(4) Peter and Lydia Brimelow were able to use this lax board oversight to pay a for-profit corporation, of which Peter and Lydia Brimelow were beneficial owners, over $1 million in VDARE's funds (*id.* ¶¶ 57–59).

(5) Lydia Brimelow used VDARE's assets to purchase the Castle, which represented around 30% to 40% of VDARE's assets in the fiscal year 2020 (*id.* ¶ 69–72, 81). Peter and Lydia Brimelow then conveyed the Castle to other BBB and BCF, which the Brimelows also owned or controlled (*id.* ¶¶ 95–97). VDARE then paid these corporations for exorbitant rent and maintenance fees, resulting in VDARE sustaining a loss for years (*id.* ¶¶ 102–07).

(6) Further, after learning of the OAG's investigation into VDARE, Peter and Lydia increased the purported rental payments to BBB and BCF (*id.* ¶¶ 117–18).

(7) VDARE did not file an annual report with the Charities Bureau for fiscal years 2022 and 2023 (*id.* ¶¶ 148–150). VDARE nevertheless continued to solicit donations as late as July 14, 2025 (*id.* ¶ 154).

In light of these allegations, VDARE's bare assertion that the Complaint fails to allege any self-dealing is without merit. The Complaint, if proven, details a staggering number of self-aggrandizing transactions with the Brimelows using VDARE as the linchpin for the scheme. While VDARE's alleged misconduct does not reach the levels of public harm as those of the organizations in *Abbott Maintenance*, *Oliver School*, or *Coalition Against Breast Cancer*, the Complaint does outline significant asset transfers and possibly fraudulent rental payments from VDARE to the Brimelows' West Virgina entities. These allegations would render VDARE a "sham charity" of which dissolution is an appropriate remedy under *Coalition Against Breast Cancer* and *Zymurgy* because VDARE was "actually being controlled by" the West Virginia entities to which "charitable contributions are being funneled" (*see Zymurgy*, 233 AD2d at 178; *see also Coalition Against Breast Cancer*, 134 AD3d 1081, 1081).

452397/2025  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No.  001

Page 9 of 16

9 of 16

VDARE's alleged misconduct also falls well within the statutory language of N-PCL § 1101(a)(1) for having "carried on, conducted or transacted its business in a persistently fraudulent or illegal manner" through its allegedly fraudulent rental payments and loan agreements with BBB and BCF and within N-PCL § 1102(a)(2)(D) for having "looted or wasted the corporate assets" and "perpetuated the corporation solely for their personal benefit."

Accordingly, the Court denies VDARE's motion to dismiss the tenth and eleventh causes of action as the Complaint adequately pleads violations of N-PCL §§ 1101 and 1102 that may require dissolution as a remedy.

### *The Court Denies VDARE's Motion to Dismiss the Fifth Cause of Action*

VDARE next argues that the Court should dismiss the fifth cause of action because the Complaint lacks any allegation of VDARE engaging in a transaction wherein a related party had a financial interest.

N-PCL § 715(f) provides:

The attorney general may bring an action to enjoin, void or rescind any related party transaction or proposed related party transaction that violates any provision of this chapter or was otherwise not reasonable or in the best interests of the corporation at the time the transaction was approved, or to seek restitution, and the removal of directors or officers, or seek to require any person or entity to:

(1) Account for any profits made from such transaction, and pay them to the corporation;

(2) Pay the corporation the value of the use of any of its property or other assets used in such transaction;

(3) Return or replace any property or other assets lost to the corporation as a result of such transaction, together with any income or appreciation lost to the corporation by reason of such transaction, or account for any proceeds of sale of such property, and pay the proceeds to the corporation together with interest at the legal rate; and

(4) Pay, in the case of willful and intentional conduct, an amount up to double the amount of any benefit improperly obtained.

452397/2025   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY          Page 10 of 16
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No.  001

Case 26-52, 04/23/2026, Dkt.... 96 of 121

N-PCL § 102(a)(23) defines a "related party" as:

> (i) any director, officer or key person of the corporation or any affiliate of the corporation; (ii) any relative of any individual described in clause (i) of this subparagraph; or (iii) any entity in which any individual described in clauses (i) and (ii) of this subparagraph has a thirty-five percent or greater ownership or beneficial interest or, in the case of a partnership or professional corporation, a direct or indirect ownership interest in excess of five percent

Finally, N-PCL § 102(a)(24) defines a "related party transaction" as:

> any transaction, agreement or any other arrangement in which a related party has a financial interest and in which the corporation or any affiliate of the corporation is a participant, except that a transaction shall not be a related party transaction if: (i) the transaction or the related party's financial interest in the transaction is de minimis, (ii) the transaction would not customarily be reviewed by the board or boards of similar organizations in the ordinary course of business and is available to others on the same or similar terms, or (iii) the transaction constitutes a benefit provided to a related party solely as a member of a class of the beneficiaries that the corporation intends to benefit as part of the accomplishment of its mission which benefit is available to all similarly situated members of the same class on the same terms.

As outlined above, the Complaint alleges facts showing that VDARE transferred ownership of the Castle to entities also owned or controlled by the Brimelows and that VDARE also transferred funds to these entities under the guise of rental payments and loans. The Complaint also alleges that VDARE, through Lydia Brimelow, paid Joseph Sullivan, her father, over $230,000.00 from October 2019 to December 2024 for business advice (NYSCEF Doc No. 1 ¶ 84–86). VDARE also allegedly housed their children at the Castle (*id.* ¶ 188). These allegations alone are sufficient to plead a related party transaction under the plain language N-PCL § 715(f).

VDARE argues that N-PCL § 715(f) requires that a related party must reap a "direct" financial benefit to fall under the statute's proscription (NYSCEF Doc No. 17, at 5–6). However, the plain language of the statute negates this argument as it provides that a related party having "a financial *interest*" to the transaction—not receiving a direct financial benefit—engages in a related party transaction (N-PCL § 102(a)(24) [emphasis added]).

452397/2025  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY                Page 11 of 16
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No. 001

11 of 16

VDARE's reliance on *Shapiro v Rockville Country Club, Inc.* is also misplaced as the issue in that case was not about whether the related party directly benefited from a corporate transaction but whether such benefit was equally available to the shareholders of a for-profit corporation governed by the Business Corporation Law rather than the N-PCL (*see* 22 AD3d 657, 659 [2d Dept 2005], citing Business Corporation Law § 713(a)).

Equally unavailing is VDARE's argument that the statute requires that a corporation is only guilty of a related party transaction upon a showing of "fault" to (NYSCEF Doc No. 17, 8–9). Assuming VDARE uses the word "fault" in reference to some sort of culpable mental state (*e.g.*, negligence, recklessness, or knowledge), the statute does not contain this language and VDARE otherwise cites no controlling legal authority holding that such a transaction requires one of these mental states (*see* N-PCL § 102(a)(24) ["any transaction in which a related party has a financial interest and in which the corporation or any affiliate of the corporation is a participant"]).

Accordingly, the Court denies VDARE's motion to dismiss the fifth cause of action as the allegations in the Complaint adequately plead a violation of N-PCL § 715(f).

### *The Court Denies the Motion to Dismiss the Sixth Cause of Action*

VDARE argues that the Complaint fails to plead the sixth cause of action for violations of EPTL § 8-1.4 because it is duplicative of the fifth cause of action.

EPTL § 8-1.4 provides, in relevant part:

> (a) For the purposes of this section, "trustee" means (1) any individual, group of individuals, executor, trustee, corporation or other legal entity holding and administering property for charitable purposes, whether pursuant to any will, trust, other instrument or agreement, court appointment, or otherwise pursuant to law, over which the attorney general has enforcement or supervisory powers, (2) any non-profit corporation organized under the laws of this state for charitable purposes[.]

* * *

452397/2025 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No. 001

Page 12 of 16

12 of 16

Case 26-52, 04/23/2026, Docket: 93.1, Page 98 of 121

(d) Every trustee shall file with the attorney general, within six months after any property held by him or her or any income therefrom is required to be applied to charitable purposes, a copy of the instrument providing for his or her title, powers and duties; provided, however, that any trustee currently registered with the department of law pursuant to article 7-A of the executive law shall be deemed to have complied with this paragraph. If any property held by a trustee or any income therefrom is required to be applied to charitable purposes at the time this section becomes effective, the filing shall be made within six months thereafter.

The Attorney General has standing to maintain an action under EPTL § 8-1.4(m) to ensure the "proper administration of any trust, corporation or other relationship to which this section applies" (*id.* § 8-1.4(m)). The purpose of this provision is "to prevent the misapplication of property held for a [tax] exempt purpose" (*In re North Manursing Wildlife Sanctuary, Inc.*, 48 NY2d 135, 142 [1979]).

As stated above, the Complaint adequately alleges that VDARE misused its charitable assets to the Brimelows' personal enrichment while also failing to file necessary reports with the Charities Bureau. The Court thus denies the motion to dismiss the sixth cause of action. As the two causes of action are pursuant to different statutory provisions, the court does not find them to be duplicative.

### *The Court Denies the Motion to Dismiss the Seventh and Eighth Causes of Action*

VDARE argues that the Court should dismiss the seventh and eighth causes of action as liability for them would effectuate a "corporate death sentence" for VDARE akin to that of liability for the tenth and eleventh causes of action.

Executive Law § 172 provides:

1. Every charitable organization, and any charitable organization registered or required to be registered pursuant to article eight of the estates, powers and trusts law, except as otherwise provided in section one hundred seventy-two-a of this article, which intends to solicit contributions from persons in this state or from any governmental agency shall, prior to any solicitation, file with the attorney general a prescribed registration form[.]

452397/2025  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No.  001                                                                    Page 13 of 16

13 of 16

Executive Law § 172-b(1)–(3) lists the reports that an organization is required to file based on the organization's approximate gross revenue. Executive Law § 172-b(5) provides that the Attorney General "shall cancel the registration of any organization" that fails to comply with the prior sections.

As stated above, the Complaint contains factual allegations that VDARE failed to file the necessary reports with the Charities Bureau for fiscal years 2022 and 2023 but nevertheless solicited donations as late as July 2024. The Court thus denies the motion as this information is sufficient to plead causes of action under the Executive Law.

VDARE cites no controlling authority holding that the seventh and eighth causes of action require the same showing of public harm or sham entity status for the judicial dissolution of a corporation, so their sole argument for dismissal without merit.

### *The Court Denies the Motion to Dismiss the Ninth Cause of Action*

VDARE argues that the Complaint fails to plead the ninth cause of action because the Complaint does not allege that BBB represented at least 80% of VDARE's assets such that the sale of BBB to MSF constituted substantially all of VDARE's assets.

N-PCL § 510 provides:

(a) A sale, lease, exchange or other disposition of all, or substantially all, the assets of a corporation may be made upon such terms and conditions and for such consideration, which may consist in whole or in part of cash or other property, real or personal, including shares, bonds or other securities of any other domestic or foreign corporation or corporations of any kind, as may be authorized in accordance with the following procedure:

* * *

(3) If the corporation is, or would be if formed under this chapter, classified as a charitable corporation under section 201 (Purposes) such sale, lease, exchange or other disposition shall in addition require approval of the attorney general or the supreme court in the judicial district or of the county court of the county in which the corporation has its office or principal place of carrying out the purposes for which it was formed in accordance with section 511 (Petition for

**452397/2025   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY**                **Page 14 of 16**
**GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL**
**Motion No.  001**

14 of 16

court approval) or section 511-a (Petition for attorney general approval) of this article.

The purpose of this provision is "to protect the beneficiaries of a charitable organization from loss through unwise bargains and from perversion of the use of the property" (*Rose Ocko Found., Inc. v Lebovits*, 259 AD2d 685, 688 [2d Dept 1999]).

The Complaint first alleges that VDARE's public disclosures regarding whether it listed BBB as an asset were "inconsistent" (NYSCEF Doc No. 1 ¶ 124). It then alleges that MSF's $400,000 offer to VDARE for the purchase of BBB represented "far more than half" of VDARE's reasonably estimated assets and that VDARE did not get approval from the Attorney General or the Supreme Court before the sale (*id.* ¶¶ 125, 126). However, the Complaint makes it unclear as to when VDARE acquired BBB as an asset. It alleges that BBB was an independent business association incorporated by Lydia Brimelow, albeit for the unlawful purposes of funneling money and real estate from VDARE to BBB (*id.* ¶¶ 93, 97, 109), and it then jumps to BBB's being sold by VDARE as an asset (*id.* ¶¶ 125–127). Nevertheless, the Complaint alleges that MSF did purchase VDARE's ownership interests in BBB—which presumes that VDARE owned interests in BBB—and such amounts could have constituted "substantially all" of VDARE's assets as the Court is required to give the nonmovant "the benefit of every favorable inference" on a motion to dismiss (*Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc.*, 30 NY3d 572, 582 [2017]).

VDARE cites no controlling legal authority in support of its argument that the OAG was required to plead that the sale constituted 80% or more of VDARE's assets to support a claim under N-PCL § 510(a). Equally unavailing is VDARE's argument in reply that the OAG failed to plead two of the three elements enumerated by *Rose Ocko Found., Inc. v Lebovits* as the purported "elements" in the case were not requirements to plead a cause of action under § 510(a)

452397/2025   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY          Page 15 of 16
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No.  001

15 of 16

Case 26-62, 04/23/2026, DktEntry: 36.1, Page 101 of 121

but simply aspects of the Second Department's reasoning in coming to its decision (259 AD2d 685, 688 [2d Dept 1999]).

Accordingly, the Court denies VDARE's motion to dismiss the ninth cause of action.

## CONCLUSION

Accordingly, it is hereby:

ORDERED that the motion of VDARE (mot. seq. 001) is denied in its entirety; and it is further

ORDERED that, within twenty (20) days from entry of this order, Plaintiff shall serve a copy of this order with notice of entry on the Clerk of the General Clerk's Office (60 Centre Street, Room 119, New York, NY 10007); and it is further

ORDERED that such service upon the Clerk shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website at the address www.nycourts.gov/supctmanh); and it is further

ORDERED that movant file an answer 10 days from receipt of notice of entry; and it is further

ORDERED that the parties appear for a virtual preliminary discovery conference via MS Teams on April 14, 2026, at 12pm.

This constitutes the decision and order of this Court.

202603051542?0SBKRAUS6E?6DBB13A3F4AD59D3DEAB3A35B4396

| 3/5/2026 | | SABRINA KRAUS, J.S.C. |
| --- | --- | --- |
| **DATE** | | |

CHECK ONE:

| | | |
| --- | --- | --- |
| CASE DISPOSED | | [X] NON-FINAL DISPOSITION |
| GRANTED | [X] DENIED | GRANTED IN PART · OTHER |

APPLICATION: SETTLE ORDER · SUBMIT ORDER

CHECK IF APPROPRIATE: INCLUDES TRANSFER/REASSIGN · FIDUCIARY APPOINTMENT · REFERENCE

452397/2025 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No. 001

Page 16 of 16

16 of 16

# EXHIBIT C

Case: 26-52, 04/23/2026, DktEntry: 36.1, Page 103 of 121



## *Letitia James*
New York State Attorney General

# *Attorney General James Sues VDARE for Rampant Self-Dealing and Misuse of Millions in Charitable Assets*

**OAG Investigation Found Peter and Lydia Brimelow Diverted Millions in Charitable Assets for Personal Benefit, Including West Virginia Castle Purchased with VDARE Funds**
**AG James Seeks to Recover Monetary Damages, Remove VDARE's Leadership, and Dissolve Charity**

## September 3, 2025

   ○      ○

NEW YORK – New York Attorney General Letitia James today filed a lawsuit against the VDARE Foundation (VDARE) and its leaders, founder Peter Brimelow and his wife, Lydia Brimelow, for years of self-dealing and abuse of charitable assets in violation of New York law. The lawsuit alleges that the Brimelows diverted at least $2 million in charitable funds from VDARE to benefit themselves and their families, while the organization repeatedly failed to submit required financial filings or submitted untruthful certifications. VDARE also continued to solicit donations even after publicly – and falsely – declaring it had shut down. Attorney General James is seeking to recover monetary damages and permanently bar the Brimelows from soliciting for or managing any New York charity. Attorney General James is also asking the court to dissolve the VDARE Foundation and place the charity's remaining assets under court supervision to be redirected to legitimate charitable purposes.

"Charities are intended to serve the public, not to bankroll castles or pad personal fortunes," said **Attorney General James**. "The Brimelows used VDARE like their personal piggy bank, draining millions in charitable assets to enrich themselves. New Yorkers deserve accountability, and we will not allow these bad actors to keep abusing the trust of their donors and the public. My office is taking action to ensure

these funds are used for their intended charitable purpose, remove the Brimelows from control, and shut down this fraudulent organization."

VDARE was originally established in 1999 as a New York charitable nonprofit under the name Lexington Research Institute, Ltd. Although it presented itself as a charitable research organization, in practice, its primary activity was operating VDARE.com, a blog dedicated to opposing immigration. From its inception, VDARE's board was limited only to the Brimelows, their family members, and close associates – a structure that enabled years of unchecked self-dealing.

An investigation by the Office of the Attorney General (OAG) uncovered that in 2020, the Brimelows used $1.4 million of VDARE's charitable funds to buy a medieval-style castle in Berkeley Springs, West Virginia. The castle was purportedly acquired for VDARE to use for offices and conferences, but the Brimelows promptly moved their family in and then orchestrated a series of transactions transferring ownership of the property to companies they owned or controlled. These arrangements, structured by Lydia Brimelow's father, were rubber-stamped by a board dominated by the Brimelows.

After transferring ownership of the castle to their family's out-of-state companies, the Brimelows set up a rent-back scheme, in which VDARE paid "rent" to the Brimelow-controlled entities in exchange for continued use of the castle and its grounds. Through sham lease agreements and backdated loans, the Brimelows were able to extract hundreds of thousands of dollars from VDARE. Lydia Brimelow also pledged all of VDARE's assets as collateral for a loan from a company managed by her father. Any purported board review of these transactions was meaningless because the board itself was dominated by the Brimelows and family members.

When OAG began its investigation in 2022, the Brimelows repeatedly sought to obstruct it. They ignored lawful investigatory subpoenas, withheld records, and forced the OAG to go to court simply to obtain basic documents. Even after being ordered to comply by a judge, they continued to resist. VDARE has been held in contempt of court twice, owes tens of thousands of dollars in unpaid fines that continue to accrue, and still refuses to comply with court orders.

Attorney General James alleges these obstructionist tactics were part of a calculated

Case: 26-52, 04/23/2026, DktEntry: 36.1, Page 105 of 121

effort to avoid accountability and cover up years of wrongdoing that continued even while OAG's investigation was underway. Indeed, as OAG's scrutiny increased, the Brimelows accelerated their asset-stripping: inflating monthly "rent" payments from $6,000 to $33,000 in just four months, releasing companies under their control from more than $1 million in mortgage obligations, and quietly transferring the remaining shares of the castle to an out-of-state for-profit company believed to be controlled by Lydia Brimelow's father.

In 2024, VDARE publicly announced it was shutting down and closed its website. By this point, millions of dollars in charitable assets had been funneled to family-controlled entities, leaving only $150,000 in VDARE's accounts. In total, VDARE sent:

- Over **$1.7 million** to Berkeley Springs Castle Foundation (BCF), a West Virginia corporation created by Lydia Brimelow;
- At least **$1.18 million** to Happy Penguins, a now-defunct Connecticut corporation owned by Peter and Lydia Brimelow;
- At least **$39,439** in backdated, unrepaid loans to BBB LLC, a for-profit company created and controlled by Lydia Brimelow; and
- **$230,000** to Lydia Brimelow's father for "consulting services," in an unapproved related-party transaction.

In addition, when the Brimelows sold their remaining castle interest to the company linked to Lydia Brimelow's father, they accepted just $168,000 – despite a prior appraisal valuing it at more than $600,000. As part of its investigation, OAG reviewed communications in which Lydia Brimelow and her father acknowledged the risk of regulatory scrutiny and agreed to "reassess" the property's value downward, deliberately structuring the deal to evade OAG review and approval.

Despite announcing VDARE's closure, the Brimelows did not actually dissolve the organization and instead continued soliciting donations. The group has also failed to file required annual reports for three consecutive years, and earlier filings signed by the Brimelows contained false statements and omissions.

Attorney General James is seeking restitution and penalties for the Brimelows' misuse of charitable assets, the rescission of all unlawful transactions – including the castle

Case: 26-52, 04/23/2026, DktEntry: 36.1, Page 106 of 121

transfer – and the dissolution of VDARE. Attorney General James is also asking the court to permanently bar Peter and Lydia Brimelow from serving as officers, directors, or trustees of any New York charity, prohibit them from soliciting charitable contributions in the state, and appoint a receiver to safeguard VDARE's remaining assets and ensure that what remains is distributed to legitimate charities.

This matter is being handled by Civil Rights Section Chief Rick Sawyer and Charities Enforcement Section Chief Emily Stern with Assistant Attorneys General Rachel Finn and Benjamin Liebowitz and Research Analyst Heather-Destiny Konan. The Civil Rights Bureau, led by Bureau Chief Sandra Park, and the Charities Bureau, led by Bureau Chief James Sheehan, are both part of the Division for Social Justice, which is led by Chief Deputy Attorney General Meghan Faux and overseen by First Deputy Attorney General Jennifer Levy.

# EXHIBIT D

## Hitsous, Jonathan

| | |
|---|---|
| **From:** | Frederick C. Kelly, Esq. <fckellylaw@protonmail.com> |
| **Sent:** | Tuesday, April 14, 2026 11:52 AM |
| **To:** | Tara Szap |
| **Cc:** | edward@taylordykema.com; Liebowitz, Benjamin; Sawyer, Richard; Sheehan, James; Avery@taylordykema.com; Finn, Rachel |
| **Subject:** | RE: 452397/2025 People of the State of New York, by Letitia James, Attorney General of the State of New York v. VDARE Foundation, Inc. et al |

[EXTERNAL]

Yes.

Frederick C. Kelly, Esq.
One Harriman Square
Goshen, NY 10924
(845) 294-7945

Sent with Proton Mail secure email.

On Tuesday, April 14th, 2026 at 11:46 AM, Tara Szap <tszap@nycourts.gov> wrote:

Is the proposed PC order filed on NYSCEF on consent of both parties?

Please advise. If so , appearance is waived

Tara M. Szap, Esq.

Principal Law Clerk

Hon. Sabrina Kraus

60 Centre Street

New York, New York 10007

646.386.5727

1

**Hitsous, Jonathan**

| | |
|---|---|
| **From:** | Frederick C. Kelly, Esq. <fckellylaw@protonmail.com> |
| **Sent:** | Friday, April 10, 2026 4:45 PM |
| **To:** | Finn, Rachel |
| **Cc:** | Avery Horovitz; Liebowitz, Benjamin; Edward Paltzik; Sawyer, Richard; Isaac Diskind |
| **Subject:** | RE: People v. VDARE, et al. -- Proposed Case Management Order |

Dear Ms. Finn:

This will not hold up the discovery schedule. We can discuss further.

Regards,

Frederick C. Kelly, Esq.
One Harriman Square
Goshen, NY 10924
(845) 294-7945

Sent with Proton Mail secure email.

On Friday, April 10th, 2026 at 4:21 PM, Finn, Rachel <Rachel.Finn@ag.ny.gov> wrote:

> Fred,
>
>
> We are not aware of any rule requiring the reproduction in initial disclosures of materials squarely within your control which you've already produced to us. Let us know on what authority you believe there is such a requirement.
>
>
> Is this going to hold up the scheduling order? If so, we'll need to make a note of it for the Court.
>
>
> Thanks,
>
>
> **Rachel Finn | Assistant Attorney General**
>
> Civil Rights Bureau
>
> New York State Office of the Attorney General
>
> 28 Liberty Street | New York, New York 10005

1

(212) 416-8629 (o) | (917) 227-6836 (c)

rachel.finn@ag.ny.gov

Pronouns: She/Her/Hers

**From:** Frederick C. Kelly, Esq. <fckellylaw@protonmail.com>
**Sent:** Friday, April 10, 2026 3:27 PM
**To:** Finn, Rachel <Rachel.Finn@ag.ny.gov>
**Cc:** Avery Horovitz <Avery@taylordykema.com>; Liebowitz, Benjamin
<Benjamin.Liebowitz@ag.ny.gov>; Edward Paltzik <Edward@taylordykema.com>;
Sawyer, Richard <Richard.Sawyer@ag.ny.gov>; Isaac Diskind
<Isaac@taylordykema.com>
**Subject:** RE: People v. VDARE, et al. -- Proposed Case Management Order

Yes, we expect the AG to produce back to us what she deems to be statements of
VDARE.

Frederick C. Kelly, Esq.

One Harriman Square

Goshen, NY 10924

(845) 294-7945

Sent with Proton Mail secure email.

On Friday, April 10th, 2026 at 3:22 PM, Finn, Rachel
<Rachel.Finn@ag.ny.gov> wrote:

> Hi Fred,

> We are not sure what statements you expect Defendants to receive
> in initial disclosures that would come from documents VDARE
> produced *to* OAG as responsive to the subpoena. Can you please
> explain this point?

2

Thanks,


**Rachel Finn | Assistant Attorney General**

Civil Rights Bureau

New York State Office of the Attorney General

28 Liberty Street | New York, New York 10005

(212) 416-8629 (o) | (917) 227-6836 (c)

rachel.finn@ag.ny.gov

Pronouns: She/Her/Hers


> **From:** Frederick C. Kelly, Esq.
> <fckellylaw@protonmail.com>
> **Sent:** Friday, April 10, 2026 2:16 PM
> **To:** Finn, Rachel <Rachel.Finn@ag.ny.gov>
> **Cc:** Avery Horovitz <Avery@taylordykema.com>;
> Liebowitz, Benjamin <Benjamin.Liebowitz@ag.ny.gov>;
> Edward Paltzik <Edward@taylordykema.com>; Sawyer,
> Richard <Richard.Sawyer@ag.ny.gov>; Isaac Diskind
> <Isaac@taylordykema.com>
> **Subject:** RE: People v. VDARE, et al. -- Proposed Case
> Management Order


> Dear Ms. Finn:


> VDARE can agree, but please confirm
> that Defendants will be receiving copies of actual
> statements, rather than being referred to the
> voluminous documents already produced pursuant to
> the various subpoenas.


> Regards,


> Frederick C. Kelly, Esq.

3

One Harriman Square

Goshen, NY 10924

(845) 294-7945


Sent with Proton Mail secure email.


On Friday, April 10th, 2026 at 2:07 PM, Finn, Rachel <Rachel.Finn@ag.ny.gov> wrote:

> Avery and Fred,
>
> Please confirm as soon as possible that the proposed order (attached again here) is acceptable. It reflects all of your requested changes to the timeframes.
>
> The Court requested that we file the completed order in advance of the conference. Because there does not seem to be any disagreement on our proposed schedule, OAG plans to submit the proposal to the court today. If we cannot agree on this schedule, we will note your objection.
>
> Thanks,
>
> Rachel
>
> **Rachel Finn | Assistant Attorney General**
>
> Civil Rights Bureau
>
> New York State Office of the Attorney General

4

28 Liberty Street | New York, New York 10005

(212) 416-8629 (o) | (917) 227-6836 (c)

rachel.finn@ag.ny.gov

Pronouns: She/Her/Hers

Hi Fred,

Interrogatories are regulated by the Court's Uniform Rules and limited to 25, including subparts, per Section 202.20.

We are not sure what statements you expect Defendants to receive as production in initial disclosures. Can you please explain that point of concern?

Finally, we can agree to your request to amend 6(c) with the dates of June 1 and July 1 (rather than May 14 and June 14).

Avery & Fred, any issues with the attached proposal that revises 6(c)?

Thanks,

Rachel

5

**Rachel Finn | Assistant Attorney General**

Civil Rights Bureau

New York State Office of the Attorney General

28 Liberty Street | New York, New York 10005

(212) 416-8629 (o) | (917) 227-6836 (c)

rachel.finn@ag.ny.gov

Pronouns: She/Her/Hers

**From:** Frederick C. Kelly, Esq. <fckellylaw@protonmail.com>
**Sent:** Wednesday, April 8, 2026 4:09 PM
**To:** Finn, Rachel <Rachel.Finn@ag.ny.gov>
**Cc:** Avery Horovitz <Avery@taylordykema.com>; Liebowitz, Benjamin <Benjamin.Liebowitz@ag.ny.gov>; Edward Paltzik <Edward@taylordykema.com>; Sawyer, Richard <Richard.Sawyer@ag.ny.gov>; Isaac Diskind <Isaac@taylordykema.com>
**Subject:** RE: People v. VDARE, et al. -- Proposed Case Management Order

Dear All,

There are several concerns:

1. With regard to the initial disclosures at 6(a), I believe that Defendants will be receiving copies of actual statements, rather than being

6

referred to the voluminous documents already produced pursuant to the various subpoenas. Does Plaintiff agree? If so, what is the approximate volume of material we are looking at?

2. If voluminous, then 16 days between the date of production will not be sufficient for the stage of D&I discovery at 6(c). I suggest June 1st is a better deadline for the D&I demands, with production set for July 1st.

3. Interrogatories should be limited to 25, including sub-parts.

Regards,

Frederick C. Kelly, Esq.

One Harriman Square

Goshen, NY 10924

(845) 294-7945

Sent with Proton Mail secure email.

On Tuesday, April 7th, 2026 at 6:06 PM, Finn, Rachel <Rachel.Finn@ag.ny.gov> wrote:

Hi Avery,

The additional two weeks for initial interrogatories is fine with us. Attached is a revised proposed order that reflects this change.

7

Mr. Kelly – are you OK with this attached version?


Thank you!

Best,

Rachel


**Rachel Finn | Assistant Attorney General**

Civil Rights Bureau

New York State Office of the Attorney General

28 Liberty Street | New York, New York 10005

(212) 416-8629 (o) | (917) 227-6836 (c)

rachel.finn@ag.ny.gov

Pronouns: She/Her/Hers


[EXTERNAL]

Hi all,

8

One suggested edit from our end: we'd like to propose pushing out the deadline for the initial interrogatories by two weeks, from May 14, 2026 to May 28, 2026, with responses due on June 29, 2026. Apart from this change, we are comfortable with the proposed PC order circulated by Mr. Liebowitz.


Thank you,



**Avery Horovitz**
*Of Counsel*

Taylor Dykema PLLC
914 E. 25th Street Houston, TX 77009
(551) 273-4410 | Avery@taylordykema.com

Confidentiality Notice: The information contained in this transmission is attorney-client privilege use of the addressee. If you are not the intended recipient, you are hereby notified that any disclosu communication is strictly prohibited. If you have received this communication in error, please notify this message and any attachments from your system.


**From:** Liebowitz, Benjamin <Benjamin.Liebowitz@ag.ny.gov>
**Sent:** Wednesday, April 1, 2026 10:59 AM
**To:** Edward Paltzik <Edward@taylordykema.com>; Frederick C. Kelly, Esq. <fckellylaw@protonmai

l.com>; Avery Horovitz
<Avery@taylordykema.
com>
**Cc:** Finn, Rachel
<Rachel.Finn@ag.ny.go
v>; Sawyer, Richard
<Richard.Sawyer@ag.n
y.gov>
**Subject:** People v.
VDARE, et al. --
Proposed Case
Management Order

Good morning, all,

In advance of our
upcoming preliminary
conference, I have
prepared a proposed
PC Order.

Please let me know if
you have questions or
suggested edits.

We are available for a
conference call to
discuss any issues
next week, with a
strong preference for
Monday or Tuesday.

Best,

**Ben Liebowitz**

Assistant Attorney
General

10

Office of the New York
State Attorney General

Social Justice |
Charities Bureau

28 Liberty Street | New
York, NY 10005

Tel: (212) 416-8636|
Benjamin.Liebowitz@
ag.ny.gov

He/Him

**IMPORTANT
NOTICE:** This e-
mail, including any
attachments, may
be confidential,
privileged or
otherwise legally
protected. It is
intended only for the
addressee. If you
received this e-mail
in error or from
someone who was
not authorized to
send it to you, do not
disseminate, copy or
otherwise use this e-
mail or its
attachments. Please
notify the sender
immediately by reply
e-mail and delete
the e-mail from your
system.

**From:**
Avery
Horovit
z
<Avery
@taylor

11

dykema.com>

**Sent:** Tuesday, April 7, 2026 5:29 PM

**To:** Liebowitz, Benjamin <Benjamin.Liebowitz@ag.ny.gov>; Edward Paltzik <Edward@taylordykema.com>; Frederick C. Kelly, Esq. <fckellylaw@protonmail.com>

**Cc:** Finn, Rachel <Rachel.Finn@ag.ny.gov>; Sawyer, Richard <Richard.Sawyer@ag.ny.gov>; Isaac Diskind <Isaac@taylordykema.com>

12

**Subject**: RE: People v. VDARE, et al. -- Proposed Case Management Order

**From:** Finn, Rachel
**Sent:** Thursday, April 9, 2026 11:45 AM
**To:** Frederick C. Kelly, Esq. <fckellylaw@protonmail.com>
**Cc:** Avery Horovitz <Avery@taylordykema.com>; Liebowitz, Benjamin <Benjamin.Liebowitz@ag.ny.gov>; Edward Paltzik <Edward@taylordykema.com>; Sawyer, Richard <Richard.Sawyer@ag.ny.gov>; Isaac Diskind <Isaac@taylordykema.com>
**Subject:** RE: People v. VDARE, et al. -- Proposed Case Management Order

13